UNITED STATES, Appellee

v

THOMAS F. SWEENEY, Ship's Serviceman Second Class, U. S. Navy, Appellant

14 USCMA 599, 34 CMR 379

*Lieutenant Colonel John R. De Barr,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant John P. Meade,* USNR.

*Major J. M. Detrio,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

As his case appears before this Court, accused stands convicted of a single count of conspiracy to commit larceny, in violation of Article 81, Uniform Code of Military Justice, 10 USC § 881. His conviction of larceny of more than $50.00 was set aside by a Navy board of review, for an error not here involved, and he was acquitted of a third charge of making false statements under oath. The sentence as finally approved consists of a bad-conduct discharge, confinement at hard labor for six months and reduction to pay grade E–1.

We granted accused's petition to consider whether it was error for the law officer to deny accused's motion for the personal appearance of four named individuals as material witnesses in his behalf and to consider the correctness of the instructions on conspiracy.

The charge alleged that from November 1960, until January 1961, Sweeney conspired with one Ickes to commit larcenies of money in excess of $50.00 from the ship's stores of the U.S.S. THE SULLIVANS and that in order to effect the object of the conspiracy the accused took various amounts from the cash register while Ickes falsified the records. The accused was the store operator and Ickes was the supply supervisor and record keeper, and the main prosecution witness. Ickes testified under a grant of immunity.

Prior to trial defense counsel requested the personal presence of Rear Admiral William C. Hughes, USNR, and Lieutenant Cole Black, USN, as character witnesses for the accused. The letter of request outlined the witnesses' opportunity to observe the accused, what their testimony would consist of, and explained that their testimony was necessary due to the fact that the accused's character was put in issue by the nature of the offenses charged. The convening authority denied this request on the grounds there was no showing that the *personal* appearance of these witnesses was necessary or that their expected testimony might not satisfactorily be introduced at trial by other means. He informed defense counsel that appointed trial counsel had indicated his willingness to enter into a stipulation of expected testimony.

Similarly, defense counsel requested the personal presence of John H. Feldner, Storekeeper Chief, USN, and a Mr. Richard J. Pierce, a former seaman living in Illinois. It was indicated that these witnesses would testify on the merits as to the access of unauthorized persons to ship's stores merchandise. The request was denied for the same reasons as set forth above. In each instance it is noted that the convening authority offered to "extend every other consideration to permit their voluntary appearance."

Prior to arraignment, during an out-

601

of-court hearing, defense counsel moved that the four above-named witnesses be subpoenaed and provided the law officer with the correspondence relative thereto. (Defense Exhibits A–G.) Trial counsel resisted the motion and indicated a willingness to stipulate as to the testimony of all four witnesses. The law officer denied the motion to subpoena these witnesses as well as an alternative motion to dismiss all charges.

At the conclusion of the prosecution's case, and again just before the defense rested, defense counsel renewed his motion for the personal appearance of the same four witnesses. The law officer adhered to his former ruling and defense counsel declined to stipulate as to their testimony.

Under the Sixth Amendment to the Constitution, one accused of crime is guaranteed the right to ■ compel the attendance of witnesses. Who these witnesses shall be is a matter for the accused and his counsel. He may not be deprived of the right to summon to his aid witnesses who it is believed may offer proof to negate the Government's evidence or to support the defense. United States v Seeger, 180 F Supp 467 (SD NY) (1960); United States v McGaha, 205 F Supp 949 (ED Tenn) (1962).

Article 46, Uniform Code of Military Justice, 10 USC § 846, provides in part that:

"The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

The Manual for Courts-Martial, United States, 1951, paragraph 115a, states that the trial counsel should procure the attendance of witnesses for the prosecution and the defense. Where disagreement exists between trial and defense counsel as to the necessity of requested witnesses, the question should be referred in writing to the convening authority or to the court, together with a synopsis of the expected testimony, reasons which necessitate the personal appearance of the witness, and any other matter showing that the expected testimony is necessary to the end of justice.

In the main, this Article of the Code, and the regulations prescribed by the President in furtherance thereof, generally conform with the rules and procedure followed in civilian Federal courts. Rule 17(b) of the Federal Rules of Criminal Procedure, provides:

"Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness."

It is readily apparent that the only substantial difference between Rule 17 (b) and paragraph 115a is the necessity for the civilian defendant to aver that he does not have the means to pay the necessary costs attendant upon the witnesses' appearance. No such rule pertains in the military judicial system. To the extent that ■ the Government bears the ■ costs of litigation under the Uniform Code, all such rules should apply equally. Indeed, as stated by the court in United States v Shibley, 112 F Supp 734 (SD Cal) (1953), "unless the military code specifically provides otherwise, rules applicable to subpoena of witnesses before civil tribunals apply with equal force to . . . [military] tribunals."

We are faced then with determining the applicability of paragraph 115a of the Manual to the case at bar. The Manual provision has "the force of law." United States v Smith, 13 USCMA 105, 32 CMR 105.

In United States v Thornton, 8

602

USCMA 446, 24 CMR 256, faced with a similar situation, we held that it was prejudicial error to refuse to subpoena a defense witness whose expected testimony went "to the core of the accused's defense." *Ibid.*, at page 450. Although the defense, in *Thornton*, finally entered into a stipulation as to testimony that would have been given by the witness, we said that:

> "An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition. On the contrary, he is entitled to have the witness testify directly from the witness stand in the courtroom." [United State v Thornton, at page 449.]

We are not deterred, therefore, by the fact that defense counsel, in the case at bar, refused the ▆▆▆ ▆ prosecution's offer to stipulate. He may have done so in the mistaken belief that it was necessary to preserve his objection. Be that as it may, where there is an abuse of discretion in a refusal to grant an accused's request, the fact that a court received the expected testimony by way of stipulation would not be controlling. United States v Thornton, supra.

The right vested in a defendant by Rule 17(b), supra, is not absolute. Reistroffer v United States, ▆▆▆ ▆ 258 F2d 379 (CA8th Cir) (1958), cert den 358 US 927, 3 L ed 2d 301, 79 S Ct 313, reh den 361 US 858, 4 L ed 2d 96, 80 S Ct 42. Generally, in civilian practice, wide discretion is vested in the District Court in the matter of subpoenaing witnesses at Government expense. Murdock v United States, 283 F2d 585 (CA 10th Cir) (1960); Flanagan v United States, 308 F2d 841 (CA5th Cir) (1962); United States v Zuideveld, 316 F2d 873 (CA7th Cir) (1963). However, in Greenwell v United States, 317 F2d 108 (CA DC Cir) (1963), pet for reh en banc den, the court, without reversing the decision of the lower court, found error and remanded for a determination whether the error was harmless or prejudicial, stating:

> ". . . if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous." [Greenwell v United States, at page 110.]

Mr. Justice Reed[1] dissented in *Greenwell* "on the facts as they are shown." In so doing, he pointed out that while the discretion of the trial judge "is not absolute in the sense of 'no review under any circumstances,' . . . [it] does leave a large degree of freedom of decision to the trial judge to determine the materiality of the evidence which the defendant seeks and the likelihood that such evidence will be forthcoming."

In Coppedge v United States, 369 US 438, 8 L ed 2d 21, 82 S Ct 917 (1962), the Supreme Court, considering the question of an appeal *in forma pauperis* under 28 USC § 1915(d), said:

> ". . . it is our duty to assure to the greatest degree possible, within the statutory framework for appeals created by Congress, equal treatment for every litigant before the bar. We have expressed this view in a case comparable to the one before us here by holding that '[u]nless the issues raised [by the indigent seeking leave to appeal in forma pauperis] are so frivolous that the appeal would be dismissed in the case of a nonindigent litigant, Fed Rules Crim Proc 39(a), the request of an indigent for leave to appeal in forma pauperis must be allowed.' Ellis v United States, 356 US 674, 675, 2 L ed 2d 1060, 1061, 78 S Ct 974."

Was there then, in this case, an abuse of discretion by the law officer in refusing to issue the requested subpoenas?

With reference to the witnesses Feldner and Pierce, we think not. It

---

[1] Sitting by designation pursuant to Section 294(a), Title 28, United States Code.

was alleged by defense that these witnesses would testify that during the period the accused was alleged to have stolen money from the ship's store, unauthorized persons *could* have gained access to the merchandise. This hardly goes "to the core of accused's defense." United States v Thornton, supra. The accused was prosecuted on the theory of a conspiracy to commit larceny by withholding money from the cash register of the ship's store and, in conjunction with Ickes, covering such withholding by a falsification of records. The fact that others may also have stolen merchandise during the same period of time would not relieve the accused from responsibility. The most it might do would be to lessen the total loss attributable to this defendant.

The issue as to the requested personal testimony of Rear Admiral Hughes and Lieutenant Black is not so clear-cut. In the face of testimony by an alleged co-conspirator, testifying under a letter of immunity,[2] whose own character was severely impeached, accused defended on the ground of good character and reputation. This thereby became the "core of his defense."

It is well established that evidence of good character and military proficiency is admissible on the merits. United States v Barnhill, 13 USCMA 647, 33 CMR 179; Manual for Courts-Martial, United States, 1951, paragraph 138 *f* (2); Michelson v United States, 335 US 469, 93 L ed 168, 69 S Ct 213. And, in a particular case, it may be sufficient to raise a reasonable doubt that an accused committed the offenses charged. United States v Barnhill, supra; United States v McPhail, 10 USCMA 49, 27 CMR 123; United States v Johnson, 3 USCMA 709, 14 CMR 127; Edgington v United States, 164 US 361, 41 L ed 467, 17 S Ct 72. In United States v Gagnon, 5 USCMA 619, 18 CMR 243, we said:

". . . Furthermore, it must be acknowledged that the specific character traits of honesty and reliability are particularly relevant where the offense alleged is larceny. Hawley v United States, 133 F2d 966, 972 (CA10th Cir 1943); State v Ferguson, 222 Iowa 1148, 270 NW 874, 882 (1937)." [United States v Gagnon, at page 623.]

Such testimony is most worthy of weight in the military where an individual is carefully observed by his superiors, more carefully than falls to the lot of any member of the ordinary civil community. As we observed in United States v Browning, 1 USCMA 599, 5 CMR 27:

". . . Wigmore goes so far as to say that evidence of good soldierly character is even stronger than the customary evidence of good general character. Wigmore, Evidence, 3d ed, § 59." [United States v Browning, at page 601.]

In the case at bar, the accused was requesting the personal testimony of an Admiral and a Lieutenant. According to his counsel, both of these individuals were willing to appear and testify, but because of their official duties "orders" were necessary to allow them to be absent from their assignments. Trial was held in Rhode Island, with Admiral Hughes in Washington, D. C., and Lieutenant Black in California. Travel time by plane was computed as about two hours for the Admiral and overnight for the Lieutenant. The most telling argument advanced by defense counsel before the law officer was that the weight to be given to testimony upon an accused's character is based in large part upon the personal appearance and the manner of testifying of the witness. "There's no question but that when a person gives character testimony as he gives any testimony, that his own personal integrity and demeanor on the witness stand that goes as to the weight that they are going to give this testimony with regard to the tesimony he gives as to the character of the accused. . . . the full weight . . . [of] this testi-

---

[2] The allied papers reflect that prior to trial Sweeney declined an offer of immunity in return for his testimony against Ickes.

mony will be lost and will not be at all affective [sic] if these witnesses cannot personally appear and testify." With this statement we wholeheartedly agree as it was the basis for our holding in United States v Thornton, supra, that "An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition." It is especially true where, as in the case at bar, this testimony would be forthcoming from two officers of the Navy, one of flag rank and the other of some, though lesser, standing.

We have carefully considered the anticipated testimony of these witnesses, as outlined by defense counsel, and do not believe the request therefor could be considered as immaterial. Coppedge v United States and Greenwell v United States, both supra.

In the matter before us, the only testimony directly linking this accused with the charged offenses came from one of unsavory character who had previously lied under oath about the same matters concerning which he now testifies. On cross-examination, Ickes admitted that in January 1962, when questioned about a shortage in the ship's stores aboard the U.S.S. THE SULLIVANS, he told a representative of the Office of Naval Intelligence that he knew no reason for the shortage and that nothing had occurred during the time Sweeney was the ship's store operator which would cause him to believe that Sweeney was dishonest. He also admitted he had, by means of false pretense, "misappropriated" (1) money from four different seamen in amounts ranging from $30.00 to $393.00, (2) $39.00 from the Ship's Welfare and Recreation Fund, (3) $40.00 from three civilian women on the pretense that he would supply them with whiskey, ship's stores and shoes; that as treasurer of a ship-board lending operation, commonly called a slush fund, he failed to repay $30.00 to members of the fund; that he violated navy regulations by gambling and lending money for profit aboard ship; that in June 1959 he made a false statement under oath in an application for the limited duty officer program by stating he had not previously been arrested; that in 1961 he forged an officer's name on a purchase order without authority; that he was convicted in civilian court in Pennsylvania and sentenced to serve six months to one year on three counts of false pretense and one count of fraudulent conversion; that in December 1961, he was convicted of bigamy in civilian court in Pennsylvania; and that in 1949 he was convicted in civilian court in Connecticut of fornication.

The accused, on the other hand, presented documents from his service record consisting of: (1) Letters from the commanding officer of the U.S.S. ARCADIA, one dated June 14, 1961, commending him for his contribution to the Outstanding rating given the supply department of the ARCADIA, and the other, dated July 27, 1961, commending him for his contribution to the "E" for Battle Efficiency awarded the ARCADIA; (2) evaluation ratings for 1959 and 1960 reflecting an outstanding capability as ship's store operator aboard the U.S.S. THE SULLIVANS; (3) Good Conduct Award (second), February 24, 1961; (4) Commendation Award from the Secretary of the Navy for service aboard the U.S.S. PHILIPPINE SEA during operations in Korea for the periods August 4, 1950, to May 31, 1951, and January 31 to July 27, 1953; (5) additional items reflecting results of tests and recommendations for promotions.

In such a posture, the personal testimony of Rear Admiral Hughes and Lieutenant Black might well have tipped the balance in favor of the accused.[3] In any event, we are not persuaded the evidence of guilt is so strong that the refusal to grant the requested subpoenas for these two witnesses did not prejudice this accused. Cf. United States v Barnhill, supra.

This opinion is not to be construed as granting *carte blanche* authority for

---

[3] It is noted that four of the five members signed clemency petitions recommending probationary suspension of the punitive discharge.

the issuance of subpoenas in all cases. Each request should be carefully considered to prevent a useless or abusive issuance of process. Murdock v United States, 283 F2d 585 (CA10th Cir) (1960). It is not beyond the realm of possibility that some accused may be moved to request the personal presence of any or all of the Joint Chiefs of Staff or the Chairman thereof.[4] Each case must be decided on an ad hoc basis in which the materiality of the testimony and *its relevance to the guilt or innocence of the accused,* together with the relative responsibilities of the parties concerned, is weighed against the equities of the situation. Testimony on the merits differs widely from that offered in extenuation and mitigation, and our holding in this case is pertinent only to that issue.

The equities, however, are not all on one side. While the government has a responsibility to prevent an abuse of the right to process, it should bear in mind that it can, by the simple act of resisting a *reasonable* request for the issuance of process, effectively prevent a willing and important witness from testifying where "orders" are necessary to allow him to leave his place of assignment. In such an instance, it would matter not whether the accused had the ability to bear the necessary expense. Also, on occasion, an accused, for purpose of trial and perhaps for the convenience of the Government, is separated from the locus of the crime and/or his own regular place of assignment, in which case witnesses favorable to him would not be *readily* available. These and other similar items are worthy of note in considering requests of this nature.

With reference to the correctness of the law officer's instruction on conspiracy, considered as a whole we find them at least minimally correct and we do not believe that the court members were misled as to the elements of this offense. However, we reiterate our previous holdings that it is necessary for the prosecution to prove at least one of the overt acts alleged, and the instructions of the law officer should make this abundantly clear. Cf. United States v Reid, 12 USCMA 497, 31 CMR 83; United States v Hooten, 12 USCMA 339, 30 CMR 339. Moreover, since, in the case at bar, defense counsel participated in the preparation of the instructions and made no objection to that which was given, in the absence of compelling circumstances appellate defense counsel is now precluded from asserting prejudicial error. United States v Ayers, 14 USCMA 336, 34 CMR 116.

Accordingly, we hold that in this case the failure of the law officer to grant the accused's request to subpoena the named character witnesses constituted prejudicial error.

The decision of the board of review is reversed and the accused's conviction for conspiracy is set aside. The record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.

---

[4] See United States v Zuideveld, 316 F2d 873 (CA7th Cir) (1963), where it was held that the trial court did not abuse its discretion by denying a request under Rule 17(b), supra, for subpoenas for 420 witnesses listed as coming from most of the states and some foreign countries.