UNITED STATES, Appellee

v

BILLY JOE SEARS, Storekeeper First Class,

U. S. Navy, Appellant

20 USCMA 380, 43 CMR 220

No. 23,405

February 26, 1971

*Lieutenant Kenneth F. Ripple*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Thomas J. Donegan, Jr.*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever*, USMC, *Captain John J. Reilly*, USMCR, and *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion of the Court

FERGUSON, Judge:

The accused, a petty officer with eighteen years prior service, was tried by general court-martial consisting of a military judge alone, convened in Vietnam, on one specification each of larceny of Government property and wrongful solicitation of another to improperly dispose of Government property, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. He pleaded not guilty to both charges, was found guilty only of larceny, and was sentenced to a bad-conduct discharge, confinement at hard labor for twelve months, forfeiture of $150.00 per month for a like period, and reduction to the pay grade of E–1. The convening authority approved the findings and sentence as adjudged, despite the recommendation of the military judge that he suspend the punitive discharge, the confinement portion of the sentence, and that portion adjudging reduction below the pay grade of E–4. The Court of Military Review, while it affirmed the findings, approved only so much of the sentence as provided for confinement at hard labor for nine months, forfeiture of $150.00 per month for nine months,

**380**

and reduction to the pay grade of E-1. We granted review on the following issue:

Whether the accused was denied military due process of law by the Government's refusal to procure American witnesses on his behalf.

The issue is clearly presented in the record and is simply stated. When trial commenced on December 1, 1969, individual military defense counsel renewed his request, previously denied by the convening authority, for the presence of three witnesses who would testify on the merits of the case as to the accused's reputation for truth and veracity, and his good military character. One of the witnesses, Lieutenant Commander Simonelli, was the commanding officer of a ship then located at New London, Connecticut, and the other two, Messrs. Jacobson and Shealy, were both retired and living in the United States. Following discussion and argument by counsel on the merits of the request, the military judge ruled that the testimony of Simonelli and Shealy was pertinent to the accused's defense and granted a continuance until December 19th for their production by the Government. He did not believe that Jacobson was necessary as his testimony would be cumulative of that of the other witnesses and was, in addition, remote as to time.

When the court reconvened on December 19th, the requested witnesses were not present. Trial counsel admitted that no effort had been made to secure their attendance and, by way of explanation, produced the following self-explanatory document.

"6 December 1969

"MEMORANDUM

From: Commander, U. S. Naval Support Activity, DaNang

To: Lieutenant Thomas K. ELDEN, JAGC, USNR, Trial Counsel

Subj: General Court-Martial of SKI Billy Joe SEARS, USN

Ref: (a) MCM, 1969 (Rev.)

1. At an Article 39(a) session on 1 December 1969, the military judge granted a continuance in subject trial until 19 December 1969. The continuance was granted in response to a defense request for the production of LCDR N. W. SIMONELLI, USN, and Mr. H. D. SHEALY, before the court as defense witnesses. This request had been previously addressed to me in my capacity as convening authority and had been denied.

2. The record of the Article 39(a) session and allied papers reveal that LCDR SIMONELLI and Mr. SHEALY are desired by the defense to testify as to the accused's previous good military behavior, his general good character, and his reputation for truth and veracity. The record further reveals that LCDR SIMONELLI knew the accused during the period of October 1967 until January 1969, on board the USS ARD-5. LCDR SIMONELLI is presently still aboard USS ARD-5, located at New London, Connecticut. Mr. SHEALY appears to have known the accused during the period February 1965 until sometime in 1968. Mr. SHEALY is currently retired from the Naval Service and is living in West Columbia, South Carolina. Apparently neither LCDR SIMONELLI nor Mr. SHEALY have any information to offer concerning the facts surrounding the offenses alleged in subject case.

3. Paragraph 58b of reference (a) provides that the military judge, upon a showing of reasonable cause, shall grant a continuance as a matter of his sound discretion. Paragraph 67f of reference (a) provides that the convening authority may not direct the military judge to reconsider a ruling granting a request for a continuance. However, the military judge does not have the authority to compel the convening authority to obligate funds for the procurement of witnesses. The availability of funds for that purpose must, necessarily, be determined by the convening authority.

**381**

4. You are hereby formally advised that under the circumstances the necessary funds are not available for the purpose of producing LCDR SIMONELLI and Mr. SHEALY at trial. This determination has been made on the basis of the following considerations:

a. Neither witness is privy to any information relating to the circumstances surrounding the offenses alleged;

b. The expected testimony of the two witnesses consists solely of evidence of the accused's prior good character and his reputation for truth and veracity at his last command;

c. The government has offered to stipulate to the testimony of these witnesses or, in the alternative, to consent to the taking of their testimony by deposition;

d. Both witnesses are located on the east coast of the United States, a distance of approximately 10,000 miles from the trial situs;

e. The austere funding under which this command must currently operate does not permit the expenditure of funds for any but the most compelling purposes; and

f. It is considered that the advantage to be gained by the accused in having the military judge, sitting alone, observe the demeanor of two character witnesses, is outweighed by the expense and inconvenience to the government of transporting the witnesses half-way around the world for that purpose.

5. In accordance with the foregoing remarks, you are directed to advise the military judge that LCDR SIMONELLI and Mr. SHEALY will not be subpoenaed to appear at trial. You are further directed to request the military judge to reconsider his prior ruling in this matter. Nothing within this memorandum shall be construed as an attempt by me to direct a reconsideration, for clearly that is not within my power. While I may disagree with the military judge as to the merits of the defense request, the military judge must remain unfettered to exercise his sound discretion in matters within his exclusive competence. Consequently, you shall use great care in assuring that your request for reconsideration is not misconstrued as a directive from me in my capacity as convening authority. You will, however, assure the military judge that the witnesses requested will not, under the attending circumstance, be produced. You will further endeavor to otherwise expedite the resolution of this matter in order to avoid further delay in this case.

/s/ Emmett P. Bonner
EMMETT P. BONNER

APPELLATE EXHIBIT 13A."

In the discussion which followed, defense counsel continued to assert his right to and need for the witnesses, and trial counsel suggested that the trial proceed with all of the evidence available after which the military judge would be in a better position to determine whether the two requested Americans were necessary as witnesses. The military judge rejected trial counsel's assertion that the cost of transporting the witnesses should be a factor in his determination—"There's no dollar sign on justice." At the conclusion of the arguments he stated the following:

"MJ: I will rule like this. We will adjourn for approximately two weeks. I'll set a trial date. At which time we will proceed in the absence of these witnesses. But, with the government's understanding that if, at that time, I consider the personal appearance of these witnesses to be necessary in order for the accused to have received a fair trial; and they are not here at that date, the case will be dismissed."

When the court reconvened on January 9, 1970, the witnesses were not present. Trial counsel informed the court that he had notified the conven-

ing authority by memorandum of the court's last ruling and had later been informally told by the staff judge advocate that the witnesses would not be brought to Da Nang. Defense counsel moved for dismissal of the charges on the ground that he had been denied the assistance of essential witnesses by the Government. The military judge stated that he had already ruled on that and the parties proceeded to trial with both the prosecution and defense presenting a number of witnesses and documentary exhibits. The accused testified on the merits. Thereafter, the military judge denied the defense motion to dismiss because of the Government's refusal to produce the witnesses.

The situation in this case is sufficiently similar to that which pertained in United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964), to dictate the same result. Sweeney was convicted of one specification each of larceny and conspiracy to commit larceny.[1] Prior to trial, defense counsel's request for the appearance of several witnesses was denied by the convening authority. The presence of two of the witnesses, an Admiral and a Lieutenant under whom Sweeney had served, was desired in order that they might testify as to Sweeney's good character. When the question was again raised at trial, the law officer denied a motion to subpoena the witnesses and also denied a motion to dismiss all charges for failure of the Government to produce the requested witnesses. We reversed in *Sweeney* because we believed that the failure of the law officer to grant the request to subpoena the named character witnesses constituted prejudicial error.

Our extensive analysis of this issue in United States v Sweeney, supra, is pertinent here and a careful reading of that opinion is recommended. It will suffice for the purpose of this opinion to restate that the accused's right to compel the attendance of witnesses in his behalf, guaranteed by

the Sixth Amendment to the Constitution, is additionally secured by Article 46, Code, supra, 10 USC § 846, which provides in part:

"The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

Paragraph 115a, Manual for Courts-Martial, United States, 1969 (Revised edition), which has the force of law (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), sets forth the procedure to be followed for obtaining witnesses—it was followed in this case. The codal and Manual provisions generally conform with Rule 17(b) of the Federal Rules of Criminal Procedure, Title 18, United States Code, the only substantial difference being that a military defendant does not have to aver that he does not have the means to pay the necessary costs attendant upon the witnesses' appearance. See United States v Shibley, 112 F Supp 734 (SD Cal) (1953).

In United States v Thornton, 8 USCMA 446, 450, 24 CMR 256 (1957), faced with a similar situation, we held that it was prejudicial error to refuse to subpoena a defense witness whose expected testimony went "to the core of the accused's defense." It is well established that evidence of good character and military proficiency is admissible on the merits. United States v Barnhill, 13 USCMA 647, 33 CMR 179 (1963); Manual, supra, paragraph 138f(2); Michelson v United States, 335 US 469, 93 L Ed 168, 69 S Ct 213 (1948). And, in a particular case, it may be sufficient to raise a reasonable doubt that an accused committed the offenses charged. United States v Barnhill, supra, and cases cited at page 649. See also United States v Gagnon, 5 USCMA 619, 623, 18 CMR 243 (1955). As this Court observed in the early case of United States v

[1] The larceny charge and specification was set aside by the board of review for an error not involved in our consideration of the case.

Browning, 1 USCMA 599, 601, 5 CMR 27 (1952):

> ". . . Wigmore goes so far as to say that evidence of good soldierly character is even stronger than the customary evidence of good general character. Wigmore, Evidence, 3d ed, § 59."

In the case at bar, the military judge, after hearing argument from defense counsel, agreed ▮▮ that the witnesses were necessary and ordered the Government to produce them. When faced with the knowledge that the convening authority *refused* to comply with that order, he continued with the trial and thereafter reversed his previous finding as to the necessity of the witnesses to the defense case. In our opinion his capitulation to the will of the convening authority (United States v Knudson, 4 USCMA 587, 16 CMR 161 (1954)) was an abuse of discretion. United States v Sweeney, supra, and cases cited at page 603. Cf. United States v Barnhill, supra.

In *Sweeney*, we reversed the conviction and directed that a rehearing may be ordered. In the case at bar, the accused has served his sentence to confinement, the punitive discharge, adjudged at trial, was not approved by the Court of Military Review and the accused undoubtedly has been returned to duty. Under these circumstances, we deem it just not to require the accused to undergo the further harassment of a rehearing. United States v Sheeks, 16 USCMA 430, 37 CMR 50 (1966).

The findings of guilty are set aside and the Charge and specification is ordered dismissed.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

The appellant's testimony in this case causes me to differ with the majority's finding that he was denied military due process by the Government's refusal to subpoena his former commanding officers from the east coast of the United States to Vietnam to testify as character witnesses in his behalf.

Before findings, Sears informed the military judge that during the first part of August 1969 Storekeeper First Class Anderman visited him in his office. During the visit Anderman talked about "cumshaw deals," particularly one that had fallen through. Afterward, Mr. Pak, a Korean office employee, inquired of Sears whether Anderman would let some Koreans have material for construction of a hootch. Sears volunteered to ask. Anderman and Sears met three weeks later. The latter brought up the subject of Mr. Pak's inquiry, adding that the Koreans had a dump truck in which to transport the material. The next morning Sears notified Mr. Pak that Anderman agreed to the deal and wanted to talk to him at Anderman's base. On August 30, 1969, Anderman came to Sears' room with a bottle of whiskey he had received in trade with a garbage woman for lumber he had given her. On September 3, 1969, Anderman made a return visit to Sears, having decided not to give the Koreans the plywood they wanted. Three days later, however, Anderman again changed his mind and asked Sears where the Koreans wanted the delivery made. Sears did not know and neither did Pak. That afternoon, however, the latter gave to Sears a paper on which was written "Vietnamese Engineering Depot." When Anderman appeared that evening Sears wrote down the same phrase and gave it to Anderman, who stated that only a Navy cargo truck could enter the compound. Furthermore, he wanted the truck number and the driver's name. A few days later Pak saw the appellant and gave him another piece of paper containing this requested information. After first looking for Anderman, Sears finally telephoned to give him this message. Because Sears considered this a "cumshaw deal," *i.e.*, "if you need something; you ask a man if hes [sic] got it and if he, [sic] he'll give it to you; you'll take it," Sears did not report these negotiations to his su-

peliors. Sears denied ever discussing money with Anderman in relation to this transaction. In fact, he denied giving Anderman any money. These statements contradicted the testimony of Anderman, who had previously informed the military judge that he had agreed to the deal and that Sears promised him payment of a substantial amount of dollars and Military Payment Certificates. Anderman turned over to special agents from the Naval Investigative Service $200.00 he said Sears advanced to him.

Regardless of whether we believe Sears or Anderman about Sears's receiving payment, Sears plainly was involved in facilitating the issue in an unauthorized manner of United States Government property valued at more than $6,000.00. Use by Sears of the euphemism "cumshaw" does not conceal the fundamental nature of this deal. In this context, the word means that the Korean participants were to receive something for nothing, at least the United States Government was to receive nothing. Since the appellant's own statements admitted enough for him to be liable as a principal, character evidence by former commanding officers would be relevant only for extenuating purposes. United States v Dodge, 3 USCMA 158, 11 CMR 158 (1953). See also United States v

McPhail, 10 USCMA 49, 27 CMR 123 (1958); United States v Schultz, 18 USCMA 133, 39 CMR 133 (1969).

My view might be different if the appellant had unqualifiedly denied any wrongdoing. His testimony convinces me of his culpability; the only issue is whether he received any payment. In these circumstances, the difference of whether testimony about former good character is to be given in person or by deposition is not enough to justify my finding that no reasonable military judge could have denied the appellant's request that these witnesses be subpoenaed. United States v Davis, 19 USCMA 217, 41 CMR 217 (1970), concurring opinion. Military justice should have no dollar sign attached to it, but military justice, like the Constitution, is "not at war with common sense."

The communication from the convening authority had unfortunate consequences because it invited suspicion of improper influence, irrespective of whether he had such an intent or whether his communication had such an effect. Although I disapprove the convening authority's action here, I agree with the military judge's decision and therefore I would affirm the decision of the Navy Court of Military Review.