UNITED STATES, Appellee

v

JOEL McELHINNEY, Sergeant, U. S. Marine Corps, Appellant

21 USCMA 436, 45 CMR 210

No. 24,587

June 2, 1972

*Lieutenant Arthur H. Rainey,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain John P. Proctor,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

DUNCAN, Judge:

We granted review to consider the contention that the appellant was denied due process of law by the unlawful intrusion of the convening authority into the trial proceedings.

The appellant, who was not confined while awaiting trial, was tried by general court-martial convened in Vietnam. He was convicted of one specification each of involuntary manslaughter and willful discharge of a firearm under circumstances such as to endanger human life, in violation of Articles 119 and 134, Uniform Code of Military Justice, 10 USC §§ 919 and 934. He was sentenced to a bad-conduct discharge, forfeiture of $85.00 per month for twelve months, and confinement at hard labor for a like period. The convening authority approved the findings and sentence but suspended execution of the sentence for one year with a provision for automatic remission.

Prior to trial, defense counsel submitted a request for the attendance of the appellant's father as a witness. The request was denied by the convening authority on the ground that the requested witness was not necessary to the defense of the case. Thereafter, defense counsel requested an Article 39(a) hearing in order to present the matter to the military judge. Paragraph 115*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). The session convened on September 5, 1970, and upon hearing argument the military judge granted a defense motion to direct the Government to produce the witness. Trial counsel apparently *appealed* the decision of the convening authority. The latter, by letter, communicated with the military judge, in part, as follows:

"It is considered that your decision and action directing that the government take action to obtain this witness from the continental United States was erroneous as a matter of law. You are directed to *reconsider* your decision as to the materiality and necessity of this proposed witness." [Emphasis supplied.]

On September 21, 1970, the Article 39(a) session was reconvened. At that time the military judge requested that defense counsel give him "something more specific as to expected testimony." At the conclusion of the hearing the military judge ruled as follows:

"MJ: I'm not so much concerned with the four year lapse of time. I don't think that is such a long period of time that the father is going to have forgotten so that his opinion would not be relevant. The prosecution has brought out the one main difference that comes out at this hearing and that I did not get out of the other hearing. I had asked you before if you had other witnesses here to testify in this same matter and I got the impression that you did not—that there were no satisfactory witnesses. Maybe I misinterpreted what you said, but it appears that you are going to have other witnesses to testify on these same general characteristics of carefulness, peacefulness, and general good reputation. Now, Appellate Exhibits 6 and 7 —7 particulary—which references Article 62 of the Manual for Courts-Martial, paragraph 67f, directed me to reconsider. As Appellate Exhibit 7 indicated, I was directed to reconsider in accordance with references (a) and (b). That was a message. I answered it with a message, which, evidently, the command has

**437**

not received. The question of the legality of the convening authority's action aside and the question of the command interference which that action puts into this case aside, I did reconsider on my own motion and returned a message indicating that I affirmed my original view. At this time, though, I'm asked to reconsider again and I understand from what the trial counsel has said that, regardless of what my decision is, the witness will not be brought.

"TC: That's my understanding.

"MJ: So my decision has to be between continuing the trial or dismissing the charges, since I have no other alternative. I cannot give you more time to bring the witness.

"TC: That's correct, Your Honor.

"MJ: Well, faced with those two possibilities, I'm not prone to dismiss the case at this point. Therefore, I will have to reconsider and alter my prior ruling. I deny the motion."

We hold that the action of the convening authority in attempting to direct the military judge ▇▇▇▇▇▇▇ ▇ to reconsider his order that the witness be produced was outside the scope of his powers. Article 51, Code, supra, 10 USC § 851; paragraph 67f, Manual, surpa; United States v Sears, 20 USCMA 380, 43 CMR 220 (1971), and cases cited therein. Cf. Petty v Moriarty, 20 USCMA 438, 43 CMR 278 (1971).

Article 51 of the Code establishes the finality of rulings by the military judge on interlocutory questions not resulting in a dismissal of the charges which arise during the proceedings, and paragraph 67f of the Manual clearly prohibits the convening authority from directing the reconsideration of a judge's ruling on a motion to grant appropriate relief. See also paragraph 57b, Manual, supra. After ▇▇▇▇▇▇▇ ▇ the defense's request for the witness originally was denied by the convening authority, it was properly presented to the military judge (paragraph 115a, Manual, supra)

as a motion for relief, an interlocutory question, from the previous adverse determination. The judge's ruling on the motion was not reviewable by the convening authority. As this Court stated in United States v Boehm, 17 USCMA 530, 532, 38 CMR 328 (1968):

"Trial rulings are subject to review by a convening authority *only* as provided in the Uniform Code of Military Justice. United States v Knudson, 4 USCMA 587, 16 CMR 161 [1954]." [Emphasis supplied.]

The Manual provision, which has the force of law (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), has its origins in the authority granted in Article 36, Code, supra, 10 USC § 836.

In the case at bar, the Court of Military Review apparently decided that notwithstanding the improper motivation for reconsidering the trial judge did in fact dispassionately reconsider and reverse his prior position on the need for the production of the witness. In appreciation of the far reach of the power of a military convening authority and the military judge's confessed dilemma, we take a different view of the nature of the reason for the changed ruling. The military judge stated:

"So my decision has to be between continuing the trial or dismissing the charges, since I have no other alternative."

We are aware that upon reconsideration the military judge in ruling mentioned a different understanding of the nature of the expected testimony of available witnesses. However, after the judge mentioned his new understanding and after time to review the convening authority's reasons for ordering reconsideration, which included the fact that other witnesses were available to testify on the same subject that the accused's father would testify concerning, he then stated:

". . . I did reconsider on my own motion and returned a message indicating that I affirmed my original view. At this time, though, I'm

asked to reconsider again and I understand from what the trial counsel has said that, regardless of what my decision is, the witness will not be brought."

The ruling in issue before us is not the ruling of a judge using the wide ambit of discretion that is expected. We compassionately empathize with the predicament faced by the trial judge looking to the military reality of the matter. Nevertheless, under these circumstances, we do not believe that the judge used all the weapons in his arsenal of discretion; the error lies in the judge having allowed his decision to be influenced by the convening authority.

Since the judge's original decision was then nonappealable, the convening authority was bound in ▮ law to honor it (cf. Article 98, Code, supra, 10 USC § 898) or, if he did not desire to do so, he had the option to dismiss the charges.

After a military judge properly orders the attendance of a civilian witness, the authority to issue and to cause service ▮ and return of a subpoena is lodged in the trial counsel, not the convening authority. Paragraph 115d (1), Manual, supra, provides in part, as follows:

". . . (1) *Issue, service, and return of subpoena.* The trial counsel is authorized to subpoena as a witness, at government expense, any civilian who is to be a material witness and who is within any part of the United States, or the Territories, Commonwealths, and possessions, and can compel the attendance of such a civilian (Art. 46). . . .

. . . . .

"If formal service is believed to be necessary, the trial counsel will take appropriate action with a view to timely and economical service. For example, if the witness is near the place where the court is convened, the trial counsel, or someone detailed or designated by the commanding officer of the installation, may serve the subpoena; if the witness is near some other military installation, the duplicate subpoenas may be inclosed with a suitable letter to the commanding officer of that installation; or the duplicate subpoenas may be inclosed with a suitable letter to the commander of an army area, naval district, air command, or other comparable command within which the witness resides or may be found. These commanders will take appropriate action to complete prompt service of the subpoena by the most economical available means. Travel orders for the purpose will be issued when necessary. Service ordinarily will be made by persons subject to military law, but may legally be made by others. Service is made by personal delivery of one of the copies to the witness. The other copy, with proof of service made as indicated on the form, will be promptly returned to the trial counsel. If service cannot be made, the trial counsel will be promptly so informed. When use for it is probable, a return postage paid envelope, addressed to the trial counsel of the court and not to that officer by name, may be sent to the person who is to serve the subpoena."

What then of the error in this case? The appellant complains that he has been specifically prejudiced by the denial of the witness (United States v Sears, supra; United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964)), and denied due process of law by the unlawful intrusion of the convening authority into the trial proceedings. United States v Berry, 1 USCMA 235, 2 CMR 141 (1952). Cf. United States v Whitley, 5 USCMA 786, 19 CMR 82 (1955).

Among other contentions, defense counsel argue, in essence, that reversal is required when the convening authority usurps or improperly interferes with the military judge's function. Hereinabove, we are constrained to say that error arose when the trial judge succumbed to the tacit dictates of the convening authority. So viewed, with full regard to the impropriety of the

convening authority's action, the heavy responsibility for the error is fastened to the judge.

We find no prior decision of this Court which dictates that in the absence of prejudicial error in such a case reversal must result. Moreover, we have stated our view of dismay over the convening authority's intervention in the instant case, but do not find ₃ch distress sufficient to justify the absolute rule the accused appears to advocate.

In United States v Sweeney, supra, we held the failure of the law officer to grant the accused's request to subpoena the named character witnesses constituted prejudicial error. However, at page 606, the opinion reads:

". . . Each case must be decided on an ad hoc basis in which the materiality of the testimony and *its relevance to the guilt or innocence of the accused,* together with the relative responsibilities of the parties concerned, is weighed against the equities of the situation. Testimony on the merits differs widely from that offered in extenuation and mitigation, and our holding in this case is pertinent only to that issue."

The accused, in United States v Sears, supra, was charged with larceny and under the facts of that case the military judge's capitulation to the will of the convening authority not to compel the appearance of certain character witnesses, was deemed prejudicial error.

We must examine the record to determine whether the absence of appellant's father so prejudiced the appellant's defense that a reversal is warranted.

On July 3, 1970, Sergeant McElhinney, Lance Corporals Boutwell, Abdullah, and Lopez went to an area near Kim Son, Republic of Vietnam. While there McElhinney consumed some beer and was said not to have been drunk, but testimony related that he was "tipsy" or "high." That evening the Marines got a ride back to

Binh Ky Village in a chow truck driven by Lance Corporal Heeney. The appellant rode in the right front of the cab; Boutwell was seated next to him. While riding in the moving truck and having a jovial conversation with Boutwell, McElhinney had his weapon cradled in his arms pointed out the window parallel to the ground. Although right handed, with a finger of his left hand he caused four rounds to be fired out the window. The appellant testified as follows:

"Q. Do you remember while you were in that cab you were talking to BOUTWELL, am I correct? This is prior to the shots.

"A. Yes, sir.

"Q. And you were giggling and laughing, am I correct?

"A. Yes, sir.

"Q. Do you remember the remark, 'No balls'?

"A. Yes, sir, I believe BOUTWELL said that.

"Q. He said that to you, am I correct?

"A. Yes, sir.

"Q. Is that because you were saying to him that you were going to shoot at those Vietnamese people?

"A. No, sir.

"Q. Why did he say, 'No balls' then?

"A. 'No balls' to shoot my weapon, we joke around all the time like that. We have a tight CAP, sir."

Lance Corporal Abdullah, who was riding in the rear of the truck, stated that he "heard three or four shots. . . . I spun around and . . . as I looked out the side of the truck I saw the three dust risings from the impact of the rounds." He also stated he saw "a woman walking on the trail adjacent to the road fall."

Lance Corporal Heeney stated:

"We proceeded down further the road when we came to—we used to call that a culvert, a big dip in the road were you went down and came back up. As we came back up the side of the culvert and got back up

440

to the top of the road and the road leveled off, I heard a rifle shot. I looked real quick. Sergeant McELHINNEY's rifle was going off. He fired approximately three to four rounds. I drove and I looked like this and I saw one mamasan there—there were about four of them, I believe—walking on a small footpath approximately 40 meters off the road. This woman, she fell, almost instantly in her tracks."

At trial, the appellant admitted that the area between Binh Ky and Kim Son is frequently traveled and that it was not unusual for people to be on that road after 5:00 p.m. He further stated:

"Q. Well with that knowledge in in mind, that people do travel back and forth on the road—along that trail, why again would you shoot your rifle?
"A. Because BOUTWELL said, 'No balls', sir.

"Q. You are a Sergeant if somebody comes up to you and questions you and gets your goat, do you automatically jump off the deep end?
"A. No, sir, not always.

"Q. Would you consider that act of yours a legitimate act?
"A. No, sir, I wouldn't.

"Q. When you got back into the ville, this is Binh Ky now, do you remember saying to LOPEZ, 'Don't tell anybody I fired my rifle?'—ALLI and BOUTWELL were also there at that time?
"A. Yes, sir, I believe I did, sir."

Defense counsel argued to the trial judge that appellant's father was an essential witness, stating:

"DC: Yes, Your Honor. I believe that this witness will testify to the fact, number one: as to his son's generally good character, which we will put into evidence. We will also —we feel that he will testify to the non-negligent character, this specific trait which we will put into evidence. Also, Your Honor, based upon the fact that this is a former Marine, he would be able to assimilate his son's conduct in a military framework as well as a general civilian framework, as far as character is concerned.

"MJ: When you say that he would testify as to a characteristic of not being negligent, what type of testimony are you considering?

"DC: Carefulness, the trait of carefulness—whether he's careful in his habits, whether he's negligent in doing things or, possibly, whatever he did he was careful in how he did it. I feel that, under the circumstances, this is an extremely negligent act involving the death of a human being. If a person is negligent in certain things, we can transpose this to the case at hand, and if he's not negligent under the circumstances of this case and, indeed, if he was."

We discern from the record that McElhinney's defense largely centered around his testimony that he looked and did not observe anyone in the area where he fired the shots; therefore, he was not neglectful. Presumably the thrust of expected testimony of the appellant's father would be evidence of a lifelong good character and carefulness with firearms based upon family training. The defense, however, called seven witnesses who opined that the appellant was a careful person.

The evidence supportive of the conviction herein is overwhelming. Although evidence from the father regarding the accused's general character would have been admissible and would tend to strengthen his credibility, such an issue was not paramount. The materiality of any testimony the father could give concerning the appellant's usual sense of responsibility with firearms is doubtful and certainly its absence, under these unusual facts, cannot be productive of such prejudice that requires reversal. By his own judicial admission the fashion in which the weapon was fired and the reason for the firing are bizarre, not at all regular. The expected testimony of the accused's father under the facts of this case would not go "to the core of the accused's defense." United States v Thornton, 8 USCMA 446, 450, 24 CMR 256 (1957).

Considering the father's expected testimony if offered in extenuation and mitigation of sentence, we agree with the Court of Military Review that "that consequence, if it existed, and the prejudice which could arise therefrom has been dissipated by the action of the convening authority on the sentence," which has been suspended during good behavior.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.