UNITED STATES

v.

**Senior Airman George A. POWELL, Jr., FR 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 TUSLOG Detachment 193-1 United States Air Forces in Europe.**

ACM 22249.

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 March 1977.

Decided 7 Oct. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial with members on 15, 16, 17 and 18 March 1977, the accused was convicted, despite his not guilty pleas, of one offense each of wrongful transfer of marihuana (Specification 2 of the Additional Charge), wrongful sale of marihuana and wrongful possession of that drug (Specifications 1 and 2 of the

Charge),[1] in violation of Article 134, 10 U.S.C. § 934 of the Uniform Code of Military Justice. The approved sentence is confinement at hard labor for eighteen months and reduction to the grade of airman basic.

In the only assertion of error meriting discussion, appellate defense counsel contend the military judge abused his discretion by failing to order the appearance of certain requested defense witnesses. Upon careful examination of the record, we agree.

Although appellate defense counsel chiefly complain about the military judge's denial of the defense request for two military witnesses, a First Lieutenant Bradley and an Army Sergeant Jackson, in fact, the military judge denied the personal appearance of a total of five requested defense witnesses. Our discussion will embrace the propriety of the military judge's rulings as to all the requested witnesses.

The defense initially requested the five witnesses prior to trial by letters and messages submitted to the trial counsel pursuant to paragraph 115a of the Manual for Courts-Martial, 1969 (Rev.). The request was denied by the government. At trial, the accused's counsel renewed his request. He made it clear that four of the five requested witnesses (the other being the accused's mother) were to be utilized to demonstrate the accused's good character for truth and veracity in direct support of his testimonial denial of the charges against him. As a secondary consideration, the defense wanted all requested individuals present so that, in the event of a conviction, they could be witnesses in mitigation and extenuation of the offenses.

The defense represented that one of the requested witnesses, Lieutenant Bradley, would testify he had been the player-coach of a military basketball team on which the accused played some two years prior to the date of the charged offenses; that in that capacity he closely associated with the accused for a period of seven to eight months; that the accused's military bearing, appearance and off-duty behavior had been excellent; that the accused's general reputation at the military base had been good; that accused's reputation for truth and veracity was excellent; and that he would believe the accused under oath.

Sergeant Jackson, the other requested military witness, was represented by defense counsel as ready, able and willing to testify that for a period of about three months early in 1974 he was in close contact with the accused as his instructor in the patrol dog course at Lackland Air Force Base; that the accused performed his duties in a truly outstanding manner; had superior leadership qualities; set a high standard of conduct and morals; possessed superior military bearing and exhibited a good cooperative attitude that earned him the respect of his superiors, contemporaries and subordinates; and, that the accused's reputation for truthfulness and trustworthiness was beyond question.

The three remaining defense requested witnesses were the accused's mother and two Washington, D. C., policemen for whom the accused worked as a police trainee from June 1972 until August 1973, a short time before he entered the Air Force.

As indicated, the accused's mother was requested as a potential mitigation and extenuation witness. The defense averred she was prepared to testify concerning the accused's upbringing, accomplishments, religious background, family strife, good moral character, and excellent reputation in his home town.

The accused's counsel further represented that one of the policemen, a Sergeant Kirk, would testify that he had daily contact with the accused during the specified time period; that the accused was responsible for the care, distribution and control of police equipment worth over 150 thousand dollars; that the accused was highly regarded in the department and had a good demeanor toward his fellow trainees and officers; that the accused's attitude toward his moral responsibilities was good; that the accused's character was that of a well conducted, law

---

1. All the marihuana involved was shown to be in the hashish form.

abiding citizen; that the accused's reputation in the police department for truthfulness was excellent; and, that he would believe anything the accused would say under oath. The defense promised that the expected testimony of the other policeman, an Officer Bailey, would be similar in nature to that which would be given by Sergeant Kirk.

The military judge deferred his ruling on the defense request for witnesses until the parties had presented their evidence on the merits. In that connection, the major government witness in support of all charges against the accused was a Senior Airman Jones, an informer for the Air Force Office of Special Investigations (OSI). He was the sole witness who implicated the accused on the hashish transfer offense.

With regard to the hashish sale and possession charges, which, the evidence showed, occurred some twenty days after the transfer, Jones testified that the accused offered to sell him a kilo of the drug. Jones reported the offer to an OSI contact, and agents of the Air Force investigatory agency immediately set to work on a controlled purchase plan designed to ensnare the accused. Pursuant to the plan, the sale was made by the accused to Jones while OSI agents and a security police sergeant covertly observed the proceedings. Shortly thereafter, the accused was apprehended, and he and his vehicle were searched. The search produced an additional quantity of hashish.

Testifying in his own defense, the accused denied culpability as to all charges. His counsel called seven witnesses in support of the accused's position. Five of the seven were military peers and acquaintances of both the accused and government witness Jones. Their testimony amounted, in essence, to an attack on the credibility of Jones by showing he was biased and prejudiced against the accused and others of his race. The other two defense witnesses testified in more direct support of the accused's denial of guilt. One was a passenger in the accused's vehicle at the time of his apprehension and search. The other, a staff sergeant, testified he had been a passenger in the accused's vehicle a short time before the hashish sale. The two testified they had not seen the hashish which was found in the accused's automobile at the time he was apprehended.

The defense counsel chose not to ask any of the seven defense witnesses questions concerning the accused's character in spite of the fact the military judge lent his "assistance" to the defense in an effort to establish that some, or all, were qualified in that area. In that regard, after each of the first two witnesses had testified in open court, the judge temporarily released the court members and questioned them concerning their knowledge of the accused's character. Each testified that the accused's local reputation for truth and veracity was good. In consequence of the military judge's efforts, the accused's counsel eventually felt obliged to concede that most, if not all, of of his available witnesses could testify about his client's good character. He insisted, however, that he had no intention to utilize the witnesses for that purpose. Pointing out that the two military witnesses he desired were senior in grade to all his available witnesses except the staff sergeant, the defense counsel argued that the character witnesses he had requested would be much more beneficial to the accused's case than any of those "discovered" by the judge.[2]

In the end, the military judge denied the defense request as to all prospective witnesses, stating:

> It is obvious to this court, and has been for some time, that there are around six or seven witnesses available who could testify as to [the accused's] good charac-

2. Doubtless, an additional significant factor that influenced the defense disinclination to utilize the available witnesses in support of the accused's character was that many had been shown to have less than perfect records of conduct. One had a letter of reprimand for possession of drugs; another was in the drug rehabilitation program; one had stolen a revolver; still another, the accused's passenger at the time of his apprehension, had repeatedly asserted her Article 31, Code, 10 U.S.C. § 831, supra, privilege not to incriminate herself when asked questions about drug possession.

ter. Now these witnesses have known him for various periods of time up to and including the past fourteen months and this is way beyond the three months that Sergeant Jackson knew him, and beyond the four to five months [3] that Lieutenant Bradley knew him in the capacity of a basketball coach. These are people who are aware of his reputation at the base and at the situs of the alleged offense[s] and at this present time and not two years in the past. I feel that the testimony of the witnesses you have requested are cumulative and there are other witnesses you could call and who are available for you to call right outside this courtroom, should you desire to do so.

In one of its most recent decisions dealing with the propriety of a denial of the personal appearance of defense requested witnesses, the United States Court of Military Appeals declared:

> [I]f the testimony of a given witness is material, the live presence of that witness must be furnished or the proceedings abated, United States v. Willis, [3 M.J. 94 (C.M.A.1977)]; United States v. Carpenter, [24 U.S.C.M.A. 210, 51 C.M.R. 507, 1 M.J. 384 (1976)], unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative to the testimony of other defense witnesses.

United States v. Williams, 3 M.J. 239 (C.M.A.1977). (Footnotes omitted.)

The Court added that when the testimony of requested witnesses has been determined merely cumulative and when the judge has ruled how many of the defense requested witnesses will be permitted to testify pursuant to compulsory process, it is the singular prerogative of the defense to determine which of those witnesses will be utilized. "To permit otherwise would be to tolerate someone other than the defense counsel making this legitimate and essential defense tactical decision." United States v. Williams, supra, at page 243 (footnote 9).

In Williams, the Court found prejudicial error in the military judge's denial of the personal appearance of requested defense witnesses. The Court observed that the requested witnesses would have testified about the accused's character and job performance during military service time periods not encompassed in the testimony of the available defense witnesses. Since the accused's entire defense depended on convincing the court that he had always been a conscientious, honorable, truthful person, the testimony of such witnesses was judged by the Court to be material and in no sense cumulative. In so holding, the Court implicitly found that the testimony of the requested witnesses would not have been too stale to be material or relevant, in spite of the fact that the witnesses' association with the accused antedated the trial by as much as four years.

■ In the case at hand, as in Williams, the represented testimony of the four requested witnesses concerning the accused's good character in general and his reputation as a truthful person was unquestionably material to the issues before the court. As indicated, the accused's defense to the drug charges consisted primarily of his denial of culpability coupled with an attack on the credibility of the government's chief witness, Jones. In support of his position, the accused was entitled to call to the witness stand individuals whose favorable testimony concerning his character would have some tendency to persuade the court members that his categorical denial of guilt was entitled to credence.

The two military witnesses, Lieutenant Bradley and Sergeant Jackson, closely associated with and supervised the accused during separate periods of his military service that preceded the trial by no more than three years. Although Lieutenant Bradley's contact with the accused was more socially oriented than supervisory, the represented close nature of their relationship, as well as the presumably close association

---

**3.** This period of time, of course, understated by about three months the actual period of time

the defense had represented that Lieutenant Bradley knew the accused.

the Lieutenant had with the accused's peers on the basketball team, tends to enhance the relevance of his expected testimony.

Granting that Sergeant Jackson's association with the accused was for a period of only three months, some three years before trial, the fact that his expected testimony extended to both character and duty performance factors imbued it with sufficient relevance to entitle the accused to his personal appearance before the fact finders. Our finding of materiality in this instance should not be interpreted as an extension of the rule announced in *United States v. Carpenter*, or as subsequently applied in *United States v. Williams*, both *supra*. In the instant circumstances, Sergeant Jackson was the sole military supervisor of the accused requested by the defense. Moreover, his represented testimony indicates that the accused rather profoundly impressed him during their relatively brief association. In light of those factors, we are satisfied that the defense request was not unreasonable. See *United States v. Jouan*, 3 M.J. 136 (C.M.A.1977).

The fact that the opinions of the two policemen were based on associations with the accused almost four years before trial, a time that predated his military service, does not negate the materiality of their expected testimony.[4] As indicated, they had extensive contact with the accused over a more than one year period of time which terminated just prior to his entry into military service. In our view, the regimentation and disciplinary rigors the accused was presumably subjected to during his police training paralleled to some degree those same features of military service. In consequence, the expected testimony of the police officers would be similar in value as that of military supervisors. The status of the witnesses is an additional significant factor in our finding of materiality. Although the opinion of a civilian police officer supervisor concerning an accused's character has not been held deserving of the

same "unique and favored position" in military judicial proceedings as that of a commanding officer, surely its value would be superior to similar testimony given by a supervisor in many other areas of civilian endeavor. *United States v. Sweeney*, 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964); see *United States v. Carpenter, supra.*

We are not persuaded that the testimony of any of the four requested witnesses was cumulative of testimony which could have been delivered by available defense witnesses. The periods of time concerning which the requested witnesses would have testified did not overlap or coincide with the time periods during which the available defense witnesses knew the accused. Furthermore, the military judge's effort to persuade the defense to utilize the available, though as to many, somewhat less than perfect defense witnesses to testify concerning the accused's character, usurped the prerogative of the accused and his counsel to decide for themselves who their witnesses would be. *United States v. Williams, supra; United States v. Iturralde-Aponte,* 24 U.S.C.M.A. 1, 51 C.M.R. 1, 1 M.J. 196 (1975); *United States v. Sweeney, supra.*

It does appear, however, that the testimony of one of the civilian police officers would have been merely cumulative with that of the other. As indicated, the two observed the accused during the same time period. One was the accused's immediate supervisor; the other the superior of both. Under the circumstances, we find that the accused, at his discretion, was entitled to call only one of the two policemen as a character witness in his behalf.

We accordingly conclude that the military judge improperly denied the defense request as to three of the four witnesses. Having so concluded does not end our inquiry, however, for in spite of an accused's right to the compulsory attendance of witnesses whose testimony is deemed material and noncumulative, an improper denial of such a request does not automatically compel a reversal of an other-

4. In *United States v. Williams, supra*, one of the requested witnesses whose testimony was determined material and relevant was the ac-

cused's supervisor during a period of time that predated the trial by more than four years.

wise valid conviction. In that regard, the recent cases by the Court of Military Appeals which mandate attendance of defense witnesses whose testimony is judged relevant, material and noncumulative,[5] do not vitiate, either directly or implicitly, prior decisions by the Court holding that improper denial of defense witness requests require reversal only where it appears such denials resulted in a fair risk of prejudice to the accused. See *United States v. Jones*, 21 U.S.C.M.A. 215, 44 C.M.R. 269 (1972); *United States v. Sweeney, supra;* see also *United States v. McElhinney*, 21 U.S.C.M.A. 436, 45 C.M.R. 210 (1972).

Having carefully scrutinized the record, we are persuaded that the expected testimony of the missing witnesses could reasonably have made an appreciable impact on the "core of the accused's defense" only as to the hashish transfer offense. *United States v. Thornton*, 8 U.S.C.M.A. 446, 24 C.M.R. 256, 260 (1957). As earlier recited, the Government's evidence implicating the accused in that offense consisted exclusively of the testimony of informer Jones. The accused steadfastly denied his guilt. Unquestionably, the character testimony of the requested witnesses would have had some tendency to strengthen the accused's credibility in the eyes of the court members and may have raised serious doubt as to his guilt. We accordingly find the denial of the accused's request for the witnesses prejudiced him as to that particular finding of guilty.

Conversely, we are convinced beyond a reasonable doubt that the denial did not prejudice the accused as to the hashish sale and possession offenses. The evidence supportive of those convictions may safely be categorized as overwhelming. As seen, the sale to informer Jones was made in a carefully controlled OSI environment. Several investigators observed the transaction. The accused was apprehended and searched only

minutes after the sale and additional quantities of hashish were discovered in the automobile he occupied at the time of the sale and subsequent apprehension. Under the circumstances, it is inconceivable that testimony by the requested witnesses concerning the accused's character would have exerted the slightest influence on the fact finders.

■ Having found that the accused was prejudicially denied his requested witnesses as to the hashish transfer offense, we further find their testimony would have been material to the accused's cause during sentencing. *United States v. Willis* and *United States v. Iturralde-Aponte*, both *supra* ; *United States v. Manas*, 17 U.S.C.M.A. 10, 37 C.M.R. 274 (1967). However, we find no judicial abuse of discretion in the denial of the accused's request for the personal attendance of his mother as a witness in mitigation and extenuation.

■ We grant that in many situations a parent might be considered a vital defense sentencing witness, particularly in circumstances where the accused is relatively youthful and has not long been separated from parental control and influence. In weighing the present equities, however, we believe it significant that the accused at the time of trial had been emancipated for a number of years, was married, and was responsible for the support of three children, one his own and the others step-children.

Still, we obviously cannot evaluate with precision what effect, if any, the accused's mother's testimony might have had on the court members in sentencing. We share the view of our sister service Court in *United States v. Woods*, 46 C.M.R. 503, 509 (N.C.M.R.1972), that while not every parent requested ought to be subpoenaed, in many cases (the present one not excepted) the question is quite close. Since a rehearing is

5. *United States v. Williams, United States v. Willis, United States v. Carpenter,* and *United States v. Jouan,* all *supra.*

here appropriate, and the accused may again request his mother as a mitigation witness, we can only counsel those who will be called upon to act thereon to carefully consider anew all the equities of the situation before rendering a decision.

For the reasons stated, the findings of guilty of Specification 2 of the Additional Charge, and the Additional Charge, are set aside. The findings of guilty of Specifications 1 and 2 of the Charge, and the Charge, are correct in law and fact and are affirmed. A combined rehearing is ordered. Manual for Courts-Martial, 1969 (Rev.), paragraphs 81*b*(3), 81*d*(1) and 92*a*.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.