**UNITED STATES**

v.

**Staff Sergeant Charles R. CAREY, Jr., FR 323–42–0306 Headquarters, 22d Bombardment Wing Fifteenth Air Force (SAC).**

**ACM 21881.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 12 April 1975.

Decided 17 Dec. 1975.

---

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston. Captain Martin B. Unger filed a brief on behalf of the accused. Appellate counsel for the United States: Colonel C. F. Bennett, Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

## DECISION

ORSER, Judge:

Tried by a general court-martial consisting of military judge sitting alone, the accused was convicted, despite his pleas to the contrary, of conspiracy to wrongfully introduce into a military aircraft for the purpose of transfer, import into the United States and transfer, heroin, as well as two other possession and transfer of heroin offenses, in violation of Articles 81, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 934. He was found not guilty of the two remaining offenses, further allegations of heroin possession and transfer. The approved sentence provides for a bad conduct discharge, confinement at hard labor for 24 months, forfeiture of $180.00 per month for 24 months and reduction to the grade of airman basic. The convening authority designated the United States Disciplinary Barracks, Fort Leavenworth, Kansas, as the place of confinement.

Appellate defense counsel have invited our attention to seven assertions of error submitted on the accused's behalf by his trial defense counsel. Five of the errors assigned are without merit or were thoroughly considered and properly resolved adversely to the accused in the review of the staff judge advocate. In consequence, we address only the two remaining asserted errors, which, in addition to being cited, have been ably briefed by the accused's assistant defense counsel.

In the first of the two, counsel contend:

The Military Judge erred in not ordering venue changed from March Air Force Base, California, to U-Tapao Airfield, Thailand, or in the alternative permitting trial defense counsel the opportunity to conduct a pretrial investigation in Thailand.

As may be surmised from the content of the assignment, the accused's trial was held at March Air Force Base, California, even though the offenses involved principally occurred in Thailand and the accused was assigned in that country when apprehended and initially charged. Allied documents included with the record indicate that shortly after his apprehension and incarceration, the accused, over his protest, was returned to the United States. At the time of the transfer, approximately one-fourth of his projected assignment in Thailand remained to be served.[1]

To place this issue, and the other to be addressed, in proper focus necessitates a somewhat detailed recitation of the circumstances. The Government's case was largely established through the testimony of an informant sponsored by the Air Force Office of Special Investigations. The informant testified he managed to gain the confidence of and become an active participant with several airmen, including the accused, engaged in a scheme to purchase heroin in Thailand, smuggle it into the United States aboard USAF aircraft, and finally market the drug. Indisputably, many of the operative circumstances occurred in Thailand.

According to the informant, the accused's participation in the conspiracy extended to the planning as well as the action stages. The witness related that the heroin involved in the conspiracy and the other offenses was purchased by the accused from certain Thai nationals. And, much of the planning and scheming was transacted by the accused in the presence of Thais who were either participants in or bystanders to the activity.

The record shows that the accused was apprehended and placed in pretrial confinement at U-Tapao, Thailand, on 27 January 1975, and initially charged two days thereafter. One week later, on 5 February 1975, he was transferred under escort to March Air Force Base, California, and again placed in pre-trial confinement (at Edwards Air Force Base, California). On 21 February 1975, the original charges were withdrawn and new charges preferred. These charges were investigated pursuant to Article 32, Code, 10 U.S.C. § 832, supra, on 27 and 28 February 1975.

In his report, the Article 32 investigating officer mentioned a request (apparently verbal in nature) made by counsel for the accused during the investigation that if the charges were referred to trial, the court be convened in Thailand where "so many of the potential witnesses are located." The convening authority was obviously made aware of this request, for he formally denied it in a letter addressed to the accused dated 28 March 1975, the same day the charges were referred to trial.

---

1. Although the record provides no explanation for the seemingly precipitous involuntary transfer of the accused from Thailand to the United States, we are not inclined to impugn the Government's motives in the matter. We judicially notice there exists no formal status of forces agreement between the Governments of the respective nations containing a procedure for determining which sovereign shall exercise jurisdiction over a member of our military forces charged with a crime in Thailand. Thus, prior to the accused's transfer to the United States, he was in jeopardy of being tried in the criminal courts of Thailand where sanctions for narcotic drug infractions, we further note, have historically been severe. See Restatement, Second, Foreign Relations Law of the United States §§ 55, 57 and 59; Jordan, Creation of Customary International Law by Way of Treaty, 9 AF JAG L.Rev. (No. 5), Sep-Oct '67. We have also taken judicial notice of related records of trial before us, (*United States v. Lovett,* 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957); *United States v. Moore,* 9 U.S.C.M.A. 284, 26 C.M.R. 64 (1958)), and observe that other airmen involved with the accused in the charged conspiracy were likewise brought to trial at March Air Force Base, California, during the same time frame. The evidence in those cases closely parallels that utilized by the Government in the case we here examine. On balance, it appears entirely possible the selection of the California trial situs was thought to be in the best interests of all parties.

Thereafter, by letter to the appointed trial counsel dated 2 April 1975, counsel for the accused requested that three Thai nationals be summoned as witnesses at the trial scheduled to convene on 10 April 1975. In the letter, counsel related that two of the individuals (whose names they spelled in various ways) had been mentioned by the Government's chief witness in his testimony during the Article 32 investigation, as having participated with the accused in all charged offenses. As to the third requested witness, named and also referred to by the witness as the accused's "tealock" (which we infer to mean a live-in house maid), the informant had testified she was present during alleged discussions involving the accused which led to the formulation of the charged conspiracy. Counsel continued that the Government informant's credibility and competence would be a crucial issue at trial, and expressed their belief, based on representations of the accused, that the requested witnesses would "refute," and otherwise expose as "complete and total fabrication," the informant's version of the accused's involvement in all charges.

By letter dated 8 April 1975, the staff judge advocate, on behalf of the convening authority, denied defense counsel's request, explaining that "[w]ithout sworn, signed statements from the requested witnesses, and assurances that they are willing to appear, a request to obtain their presence at this late date [two days before trial was to commence] cannot be favorably considered."

At the appropriate juncture of the ensuing trial, counsel for the accused moved for a change of venue. Following argument, the military judge, with counsel's concurrence, restated the motion as asking for a change in the trial situs or, in the alternative, to direct that the convening authority permit defense counsel to conduct an investigation in Thailand. In their argument, counsel contended that the Government's decision to try the accused in California, some 6,000 miles from the Thailand scene of events, effectively deprived the defense of an opportunity to seek out, interview and obtain potential defense witnesses, not only those named by the informant, but also others unnamed but alluded to by the individual.

After considering all evidence and arguments on the matter, the military judge denied the venue motion as well as the alternate request for an on-scene Thailand investigation. Before this Court, defense counsel urge that the denial of the motion, and the alternative relief requested, deprived the accused of an opportunity to properly prepare his defense, and thus denied him a fair trial.

■ As we view it, the issue is most appropriately framed in terms of whether denial of the requested relief deprived the accused of his Sixth Amendment Constitutional right to the effective aid or assistance of his counsel. When such a deprivation occurs, all findings of guilty affected thereby must be set aside, without regard to the question of prejudice, for

[t]he right to counsel is fundamental to a fair trial. An appellate court will reverse a conviction without indulging "in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 86 L.Ed. 680, 62 S.Ct. 457. . . . Where the denial of effective assistance of counsel affects the entire proceedings against an accused, reversal of all findings of guilty is unquestionably proper. *United States v. Sizemore,* 2 U.S.C.M.A. 572, 10 C.M.R. 70.

*United States v. Best,* 6 U.S.C.M.A. 39, 19 C.M.R. 165 (1955). Upon careful consideration of the record before us, we are convinced the defense contention is without merit.

■ A motion for a change of venue, or trial at a different situs than initially designated, is interlocutory in nature and the trial ruling of the military judge thereon is final. Article 51(b), Code, 10 U.S.C. § 851(b) supra. *United States v. Nivens,* 21 U.S.C.M.A. 420, 45 C.M.R. 194 (1972); *United States v. Van Arsdall,* 22 U.S.C.M.A. 183, 46 C.M.R. 183 (1973). Initially, the convening authority has the responsibility to determine where trial will be held. He per-

forms this function at the time the charges are referred and the court-martial created by issuance of the convening order. Manual for Courts-Martial, 1969 (Rev), paragraph 36. Until that time, a request for a particular trial location is properly addressed to him. Thereafter, such motion is addressed solely to the military judge, whose ruling thereon may not be overturned by the convening authority. *United States v. Nivens,* and *United States v. Van Arsdall,* both supra.

Venue motions are usually concerned with the question of whether a general atmosphere of hostility exists at the initial trial situs. However, in *United States v. Nivens,* supra, the United States Court of Military Appeals declared that such motions may extend as well to the totally unrelated subject of facilitating the preparation of the defense and for the convenience of the parties. Thus, a change of venue may be sought, as it was here, for the purpose of according an accused his right to a thorough pretrial investigation and the discovery of favorable witnesses. 45 C.M.R. at 197; Rule 21(b), Federal Rules of Criminal Procedure; *United States v. Cox,* 23 C.M.R. 535 (A.B.R. 1957). The military judge's decision to grant or deny a motion for a change of venue is within his sound discretion, and a denial will not be disturbed by an appellate tribunal absent an abuse thereof. *United States v. Carter,* 9 U.S.C.M.A. 108, 25 C.M.R. 370 (1958); *United States v. Hurt,* 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958). Stated in terms of the present inquiry, a finding of judicial abuse of discretion is dictated if it appears a shifting of the trial situs was necessary to permit adequate defense trial preparation.

In determining whether the military judge abused his discretion, it is necessary to examine the accused's pretrial efforts to achieve a different trial situs and the propriety of the convening authority's action. Obviously, in exercising his judgment when the motion was presented in his courtroom, with the trial already underway, the military judge was influenced by such evidence. Thus, in our appellate scrutiny of the judge's decision, we too will accord these factors appropriate significance.

Though the record demonstrates the defense was aware early on that any trial on the charges was destined for March Air Force Base, California, at no time, to our knowledge, did they submit a formal request to the convening authority, supported by cogent reasons, for trial in Thailand. The sole pretrial indication of such a desire was their verbal request during the Article 32 investigation which was subsequently made known to the convening authority. As previously observed, that request was supported only by a general statement to the effect that many unspecified potential witnesses were located in Thailand. Significantly, at no time before trial did any member of the defense seek permission to conduct an on-the-scene investigation in Thailand, either by themselves or even by locally appointed representatives. So far as the record is concerned, that desire first arose during trial when the military judge, of his own volition, rephrased the venue motion to include such alternative relief.

Absent a further defense demonstration of good cause for the requested shift in the trial situs, the convening authority had no reason to believe a fair trial could not be achieved at the California trial site. From his point of view, all known essential witnesses were either present or would be available for trial. The Article 32 report of investigation certainly provides no contrary indication. The very first notice of any substance that specific witnesses deemed crucial by the defense were located in Thailand was the request for named Thai witnesses submitted following denial of the request for trial in that country. Of course, such request was submitted in conclusory terms and contained no detailed synopsis of the anticipated testimony of the witnesses. See Manual for Courts-Martial, 1969 (Rev), paragraph 115a. Conversely, the Article 32 report, which the convening authority no doubt considered, is replete with evidence strongly indicative of the accused's guilt of the charged offenses. In addition to the informant's testimony, it includes sworn

statements rendered by two of the accused's alleged coconspirators, wherein, besides admitting their own complicity, they relate the accused was involved in and, in fact, in the words of one, was the "coordinator and mastermind" of the drug operation. These statements and other evidence in the Article 32 report, such as sworn statements by two individuals not shown to be involved in the alleged conspiracy which recite admissions of guilt made to them by the accused, directly corroborate pertinent particulars of the informant's version of the accused's guilt.

In light of this evidence, we are persuaded, as implicitly, was the military judge, that the convening authority's denial of the venue request was a reasonable decision. The defense simply failed to demonstrate they would be unduly hampered in preparation if trial were held in California rather than Thailand. See *United States v. Nivens,* supra.

With this background in mind, with no additional justification advanced by the defense, and the trial already in progress, we find no abuse of discretion in the military judge's denial of the venue motion and the alternative request. We are convinced, on the basis of the entire record, there is no reasonable possibility such action deprived the accused of the effective assistance of his counsel.

In their remaining assertion of error, counsel urge:

> The Military Judge erred in not ordering the attendance of three material witnesses whose testimony could have gone to the core of the accused's defense.

Again we disagree.

As we have seen, the accused's trial defense counsel, some eight days before the scheduled trial, unsuccessfully requested that three named Thai witnesses be summoned to testify for the defense. At trial, following the military judge's denial of the change of venue/on-scene investigation motion, defense counsel renewed their request for the appearance of the Thai witnesses.

In argument on the motion, defense counsel conceded that none of the requested witnesses had been contacted. In fact, it does not appear from the record that counsel for the accused made any effort to contact the Thais, either personally, or through others on their behalf. Clearly, the anticipated testimony from the three was based solely on representations from the accused to his counsel. Understandably, counsel could provide no assurance that the requested witnesses could be located, or even if located, would be willing to appear and testify. And, of course, it must be borne in mind that assuming they could be found, we judicially note they were not subject to compulsory process to secure their appearance in the California courtroom.[2] See *United States v. Staton,* 48 C.M.R. 250 (A.C. M.R. 1974).

■ It is firmly established in military law that an accused, by virtue of the Sixth Amendment to the Constitution, is guaranteed the right to compel the attendance of witnesses. "Who these witnesses shall be is a matter for the accused and his counsel. He may not be deprived of the right to summon to his aid witnesses who it is believed may offer proof to negate the Government's evidence or to support the defense." *United States v. Sweeney,* 15 U.S.C.M.A. 599, 34 C.M.R. 379 (1964). And it is prejudicial error to refuse to order the appearance of a defense requested witness whose expected testimony goes to the "core of the accused's defense." *United States v. Thornton,* 8 U.S.C.M.A. 446, 24 C.M.R. 256 (1957).

In *United States v. Young,* 49 C.M.R. 133 (A.F.C.M.R. 1974), this Court determined the military judge did not err in refusing to compel the attendance of requested witnesses where the defense conceded that no member of the team had ever communicated with them. There, we declined to equate "hopes" as to their expected testimony to an offer of proof, as contemplated by paragraph 154, Manual for Courts-Mar-

---

**2.** Thailand is not even a party to the Convention on the service abroad of judicial and extra-

judicial documents in civil or commercial matters. 20 UST 361; TIAS 6638, 657 UNTS 163.

tial, supra. In the case before us, the defense's belief and anticipation as to the expected testimony of the requested witnesses bears a similarity to the "hopes" in *Young,* supra.

Here, as in *Young,* the military judge was faced with a request for witnesses concerning whose testimony no member of the defense counsel team was personally in a position to reliably represent. And, since no contact had been made with them, nor, as observed, any apparent effort to do so, the trial judge had no basis to anticipate they would appear if called.

We are aware that each case involving defense requests for witnesses "must be decided on an *ad hoc* basis in which the materiality of the testimony and *its relevance to the guilt or innocence of the accused,* together with the relative responsibilities of the parties concerned, is weighed against the equities of the situation." *United States v. Sweeney,* supra, at page 386. (Emphasis in original.) We are also frankly aware that we are here confronted with a situation where the accused "for purposes of trial and perhaps for the convenience of the Government [was] separated from the locus of the crime and . . . his own regular place of assignment," and thus any "witness favorable to him would not be *readily* available." Id. (Emphasis again in original.)

■ Notwithstanding this latter circumstance, however, we are convinced the military judge did not abuse his discretion in declining to direct the appearance of the witnesses. If the defense truly desired the witnesses to appear, in our judgment they had a responsibility to exert at least a minimal effort to contact them and verify their alleged anticipated testimony. A recitation of such activity, together with the information obtained thereby, or an assertion of

lack of success in spite of such efforts, should then have been presented to the military judge in support of the motion. In the case at hand, aside from the defense request for the witnesses submitted just eight days before trial, the record is devoid of any defense initiative along these lines. We consequently find no merit in this defense assertion of judicial error.

■ Even assuming for the purpose of this discussion that the military judge should have granted the motion, perhaps on the basis that the representation as to the expected testimony emanated personally from the accused, or that the convening authority's reference to the lack of "sworn, signed statements from the requested witnesses, and assurances that they are willing to appear" as reasons for his disapproval was in error,[3] we would remain disinclined to grant relief. In spite of an accused's Constitutional right to the compulsory attendance of witnesses, an improper denial of such a request does not automatically compel a reversal of an otherwise valid conviction. In that respect, the United States Court of Military Appeals has held that reversal is mandatory only when it appears the denial resulted in a "fair risk of prejudice to the accused." *United States v. Jones,* 21 U.S.C.M.A. 215, 44 C.M.R. 269 (1972); *United States v. Sweeney,* supra.

■ We see no such risk here, for the evidence of the accused's guilt was strong and compelling. To be sure, much of the evidence was supplied by a Government informant whose credibility was vigorously challenged by the defense. For example, on cross-examination he admitted to an extensive history of drug abuse, including use of narcotics, other dangerous and hallucinogenic drugs, and sale of approximately $700.00 worth of heroin while in Okinawa

3. In that regard, paragraph 115*a*, Manual for Courts-Martial, supra, requires that requests for witnesses be "submitted in writing, together with a statement, signed by the counsel requesting the witness, containing (1) a synopsis of the testimony that is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness,

and (3) any other matter showing that the expected testimony is necessary to the ends of justice." Neither the Manual nor case law require the defense counsel to further support such requests with signed, sworn statements of the witnesses or assurances of their willingness to appear.

during 1972. He admitted he had continued to use drugs, including marihuana, on a daily basis during his informer activities. He further confessed to having lied on a security clearance questionnaire concerning his drug usage. And, a psychiatric evaluation rendered in early 1974 opined he had a "manipulative personality."

In light of these and other similar credibility factors, and, of course, his informant status, we have weighed the witness' testimony with extreme care. Having done so, we find it clear, uncontradictory, characterized by exceptional detail and hence, convincing. Moreover, and most significantly, such evidence was corroborated in many essential respects. With the evidence in this posture, we are satisfied the denial of the defense motion resulted in no appreciable risk of prejudice to the accused's substantial rights.

For the reasons stated, the findings of guilty and the sentence are Affirmed.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.