**UNITED STATES**

v.

**Staff Sergeant Arthur E. GONZALEZ, FR 570–78–6478 United States Air Force.**

**ACM S25013 (f rev).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 26 April 1980.

Decided 4 Dec. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Lt. Colonel Bruce R. Houston.

Before MILES, KASTL, and MILLER, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

KASTL, Judge:

Staff Sergeant Gonzalez was convicted by special court-martial, military judge alone, of four offenses involving the possible compromise and loss of two top secret messages.[1] We affirm that conviction.

### Facts

Evidence at trial revealed that the accused inadvertently intermingled two classified messages from his duty section with some personal mail he was carrying to a friend. The friend, Mr. Mark Garrett, worked for a petroleum company at Prudhoe Bay, Alaska. The accused was stationed at Elmendorf Air Force Base, Alaska, some 725 miles away.

Upon arriving at Prudhoe Bay, the accused discovered the two messages. He placed them in a desk drawer in Mr. Garrett's room, intending to retrieve them prior to his departure and to return them to his duty section. After spending the weekend, he forgot the documents in the drawer and returned to Elmendorf on 25 February 1979.

Mr. Garrett works "one week on and one week off" at Prudhoe Bay, alternatively sharing the room with Mr. Nicholas Scales. On 28 February, Mr. Scales discovered the classified messages in the desk drawer.

The messages were placed in the hands of petroleum company supervisors and were back in the control of federal government officials on 2 March 1979.

At the time of trial, the accused had been transferred to Kelly Air Force Base, Texas. The court-martial was convened there under auspices of the Electronic Security Command, which directed that trial proceed in a secure area because of the extremely sensitive nature of the two classified documents. Consequently, the trial was held in Kelly's Command Air Room, a secure facility not normally used for courts-martial.

Fearful that such conditions would deny this accused his constitutional right to a public hearing, the defense counsel sought to move the situs of the trial. The military judge acknowledged the accused's right to an open trial, but noted that such right must be weighed against public policy reasons justifying exclusion of spectators for the protection of national security, if the need arose. The judge found that there was no assurance an unsecured courtroom could be sufficiently safeguarded to preclude any covert intelligence gathering—even if spectators were excused during classified testimony. He ruled that he would allow spectators to view the proceedings at the Kelly AFB secure facility, if escorted, but that they must leave when classified matters were to be discussed. Nothing in the record indicates that the public was barred; the accused's wife, an Air Force officer, attended the entire trial as a spectator except for three brief periods when she was excluded during discussion of classified data.

### Right to a Public Trial

The accused claims he was denied his right to a public trial, especially since the military judge refused the defense motion to move the trial site from a secure area to a public courtroom. The defense further insists that the military judge failed to fol-

---

1. The accused was found guilty of four violations of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. The supervisory authority approved a sentence providing for a bad conduct discharge, confinement at hard labor for 43 days, and reduction to airman basic.

low the balancing test delineated by the Court of Military Appeals in *United States v. Grunden*, 2 M.J. 116 (C.M.A.1977). We perceive no error.

At the outset, we recognize that courts-martial were historically open to the public; Colonel Winthrop states that while this tradition dates back to the earliest military practices, there is discretion to close the courtroom. Winthrop, *Military Law and Precedents*, 161–162 (2d ed. 1920). *See United States v. Maple*, 37 B.R. 47, 73 (A.B. R.1944). The Manual for Courts-Martial, 1969 (Revised edition), paragraph 53*e* states the current position:

> *e. Spectators; publicity.* As a general rule, the public shall be permitted to attend open sessions of courts-martial. Unless otherwise limited by directives of the Secretary of a Department, the convening authority, the military judge, or the president of a special court-martial without a military judge may, for security or other good reasons, direct that the public or certain portions thereof be excluded from a trial. However, all spectators may be excluded from an entire trial, over the accused's objection, only to prevent the disclosure of classified information. The authority to exclude should be cautiously exercised, and the right of the accused to a trial completely open to the public must be weighed against the public policy considerations justifying exclusion.

If a case touches upon national security matters, military courts consistently have held that the public may be excluded from such portions of the trial. *United States v. Grunden, supra; United States v. Kauffman*, 33 C.M.R. 748, 795 (A.F.B.R.1963); *aff'd in part*, 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963); *United States v. Dobr*, 21 C.M.R. 451 (A.B.R.1956). *See also, United States v. Neville*, 7 C.M.R. 180, 192 (A.F.B.R.1952), *pet. denied*, 7 C.M.R. 84 (1952). Civilian courts are in accord with this general principle. *See generally, In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948); *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272, 1274 (2d Cir. 1975);

*Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 540–541 (2d Cir. 1974); Annot., 156 A.L.R. 268, 291 (1945) and 48 A.L.R.2d 1436 (1956).

Detailed guidance on exclusion of the public in regard to matters affecting national security was developed by the Court of Military Appeals in *United States v. Grunden, supra*. There, in a case involving espionage charges, the public was excluded "from virtually the entire trial." *United States v. Grunden, supra*, at 120. In excluding the public from the trial in *Grunden*, the Court explained, the military judge erroneously employed an ax in place of the constitutionally required scalpel. The Court delineated a balancing test which should be used in instances involving the possible divulgence of classified material.

■ We find the approach of the military judge here well within the dictates of the Manual, *supra*, and *Grunden*. This trial judge used the "constitutionally required scalpel" counselled by *Grunden*; as a result, the public was excluded from only a minute part of the trial.[2] The military judge did not enforce such limited exclusion to be free of the safeguards of public scrutiny; to the contrary, he did so to protect national security. *United States ex rel. Lloyd v. Vincent, supra*, at 1274. Exclusion was sparingly exercised and used only where absolutely necessary to prevent exposure of military matters involving national security. *United States v. Grunden, supra*, at 122.

Concededly, the military judge did not follow each and every procedural nuance of the complex *Grunden* formula. However, we do not find such technical deviations prejudicial in this case. The objective of *Grunden* was met; to quibble over blueprint details is to elevate empty ritual over substance. We decline to do so. See *United States v. Moses*, 4 M.J. 847, 849 (A.C.M. R.1978).

■ As for the specific defense objection that holding trial in a secure area was a per se denial of a public trial, we find no error.

2. Of the 341 page transcript, 21 pages are classified.

We hold that the military judge properly decided to hold trial in a secure location. Because of the extremely sensitive nature of the top secret materials,[3] the judge was correct in his finding that an unsecured courtroom might not be sufficiently safeguarded from covert intelligence gathering. Absent an abuse of discretion, a trial judge's decision on the situs of a trial should not be disturbed. *United States v. Carey*, 1 M.J. 761, 765 (A.F.C.M.R.1975). We believe the judge's decision a proper exercise of his discretion, particularly since procedures were established for spectators to attend and the record does not indicate that any person was barred who wished to attend. *United States v. Czarnecki*, 10 M.J. 570 (A.F.C.M.R.1980).

*Punitive Nature of AFR 205–1*

■ The accused contends that the military judge erred in failing to dismiss two of the offenses charged under Air Force Regulation 205–1, arguing that the operative paragraph of the regulation is not punitive. We disagree.

The accused was charged under Article 92, Uniform Code of Military Justice, with violating paragraph 6–102 of Air Force Regulation 205–1 in that he failed to report a possible compromise of top secret classified code word data. The paragraph reads:

6–102 *Responsibility of Discoverer*

Any person who has knowledge of the actual or possible compromise as defined in paragraph 1–307 of classified information shall immediately report such fact to a responsible official.

(Added) Each person must immediately protect all classified material that comes into his or her possession, as a result of a security incident. He or she must promptly place it under the safeguards of an established security system and report the circumstances to the immediate supervisor, commander, or higher authority in the chain of command. They will not

conduct any inquiry or investigation, unless authorized by this regulation or competent authority.

We hold the above paragraph to be punitive. In *United States v. Nardell*, 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972) and *United States v. Scott*, 22 U.S.C.M.A. 25, 46 C.M.R. 25 (1972), the Court of Military Appeals addressed the issue of when language within a directive is punitive. In *Nardell*, the Court declared:

No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. *The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident* [citations omitted]. If the order requires implementation of subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 prosecution [citations omitted; emphasis added].

*United States v. Nardell, supra*, at 103.

We find paragraph 6–102 of AFR 205–1 enforceable, without further implementation, by the sanctions of criminal law listed elsewhere within the directive.[4] Moreover, the words "shall" and "must" used throughout clearly show its mandatory intent. Finally, it is patent that the intent of this language is to proscribe serious misconduct presenting a high degree of risk to national security. *United States v. Louder*, 7 M.J. 548, 550 (A.F.C.M.R.1969). We therefore conclude that this portion of the regulation is not merely instructional; to the contrary, it places obligations upon individuals pun-

**3.** One expert witness testified that exposure of the subject matter of these top secret code word documents and methods of procurement could seriously harm the United States in a manner requiring years to recover.

**4.** See paragraphs 6–105(b)(1) and 14–101, Air Force Regulation 205–1, Information Security Program Regulation, December 1978. See also note 6, *infra*.

ishable by the sanctions of the Code. *See United States v. Grey*, 1 M.J. 874 (A.F.C.M.R.1976). Our holding is buttressed by *United States v. Whiting*, 9 M.J. 501, 506 (A.F.C.M.R.1980) and *United States v. Perkins*, 47 C.M.R. 259 (A.F.C.M.R.1973) in which AFR 205–1 has been indirectly upheld as a punitive regulation.[5]

### Lack of Jurisdiction Due to Intervening Reenlistment

The accused also argues that the military judge erred in failing to dismiss two of the specifications because the court-martial lacked jurisdiction over the accused due to his intervening discharge. Those offenses charged the accused with permitting classified messages to be lost through gross negligence, in violation of Title 18, United States Code, Section 793(f).

At trial, the defense claimed that any possible loss took place in a prior enlistment of the accused. The defense noted that this accused's enlistment terminated on 27 February 1979 and that he reenlisted on 28 February. The government argued contrariwise that possession of the documents was continuing and lasted from one enlistment into the next while the documents were at Prudhoe Bay and within the control—albeit constructive—of the accused. Thus, according to the prosecution theory, the documents were "lost" to the Government at the moment of their discovery and possession at Prudhoe Bay by Mr. Scales and his superiors.

■ After considering the legislative intent of Title 18 U.S.C. § 793(f), we sustain the conviction. We find that a continuing violation occurred during the new enlistment and while the accused could have taken steps to safeguard the documents.[6] *See, United States v. Aloyian*, 16 U.S.C.M.A. 333, 36 C.M.R. 489, 501 (1966) and

---

**5.** We uphold this paragraph as punitive but observe that its punitive nature should be more clearly delineated, particularly in the purpose statement. In this vein, we believe it appropriate to note the language of the Court of Military Appeals in *United States v. Scott*, 22 U.S.C.M.A. 25, 46 C.M.R. 25, 29 (1972):

[W]e see no reason why the drafter of the order cannot clearly state therein to whom the provisions are applicable and whether or not further implementation is required as a condition to its effectiveness as a criminal law.

See generally Air Force Regulation 5–1, Air Force Publications Management Program, 1 June 1978, paragraphs 2–24 to 2–31.

**6.** The broad reach of 18 United States Code, Section 793 can be seen from its legislative history [1950] U.S. Code Cong. Service 3886. Title 18 was amended during passage of the Internal Security Act of 1950; overall, the Act addressed a wide range of national security matters.

There is nothing in the debates directly on Section 793(f). However, we cannot believe Congress intended to punish only *immediate* illegal activity and not *continuing* illegal acts. Such reading would provide a "safe haven" after a given period of time following an occurrence involving national security. We decline to ascribe to Congress such a skewed approach.

The thrust of Section 793(f) to reach continuing violations can also be gleaned from these comments on another portion of subsection (f) by its sponsor, Senator McCarran, during debates:

The next situation which the inter-departmental intelligence committee wished to remedy was the danger inherent in the failure of a person entrusted with any item relating to national defense to report properly and promptly the loss, theft, removal, or disappearance of such item.

Existing law provides a criminal penalty for any person entrusted with such an item relating to national defense who, through gross negligence, permits the removal, theft, loss, and so forth, of the items but where there is no negligence, and such loss does occur, there is no requirement in existing law that the person trusted with such item must report the loss promptly. As an example, if a code officer in our Embassy at Moscow should come to work some morning and notice that the main code was missing through no negligence of his own, *under existing law he could sit tight and do nothing, and his failure to institute a search, or even to warn the Department the code book was missing, would not constitute an offense. My bill would make it a crime for him to fail to report the loss promptly,* so that the proper steps may be taken by the American authorities to change the code. [emphasis added]. Cong.Rec. 14173, 14178 (Sept. 5, 1950). *See generally, United States v. Dedeyan*, 584 F.2d 36, 39–40 (4th Cir. 1978) and 93 C.J.S. *War and National Defense*, § 56 (1956). The statutory language of this section should be given broad interpretation. *Posen v. United Aircraft Products*, 111 N.Y.S.2d 261, 201 Misc. 260 (1955).

*United States v. Ronholt,* 42 C.M.R. 933, 935–936 (N.C.M.R.1970). *See also, United States v. Hobbs,* 8 M.J. 71, 72 (C.M.A.1979). Federal courts have upheld convictions upon a theory of constructive possession in several cases and we find such reasoning apposite. *See, Rodella v. United States,* 286 F.2d 306, 311–312 (9th Cir. 1960).[7] *See also, Hunter v. United States,* 339 F.2d 425, 426 (9th Cir. 1964) and *United States v. Gitlitz,* 368 F.2d 501, 505 (2nd Cir. 1966). *See generally,* Restatement of Torts, 2d ed., § 216d (1965).[8]

The remaining assignment of errors has been considered and resolved adversely to the accused.

The findings of guilty and sentence are AFFIRMED.

MILES, Senior Judge and MILLER, Judge, concur.

---

7. We believe the language of *Rodella v. United States,* 286 F.2d 306, 311–312 (9th Cir. 1960) is probative. The court considered constructive possession in these words:

> Likewise, we see no reason why an object cached by a person or his operative or agent in a certain spot on deserted land, not owned by him, perhaps located ten miles from the nearest highway, house, habitation or person would not be deemed in law within that person's possession. . . .

8. Because of our rationale here, we do not address the issue of the continued viability of

*United States v. Ginyard,* 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967). In that case, the Court of Military Appeals determined that a reenlistment, for whatever purpose, terminates jurisdiction over an offense committed in a prior enlistment. We are advised by Appellate Government Counsel that the validity of the *Ginyard* rule is presently being tested before the Court of Military Appeals by both the Army and Navy. *United States v. Calhoun,* (Dkt. No. 40,117/AF) and *United States v. Caprio,* 10 M.J. 586 (N.C.M.R.1980), motion to dismiss denied, 12 M.J. 30, 33 (C.M.A.1981).