**UNITED STATES**

**v.**

**Scott J. CHATTIN, 208 60 8825, Cryptologic Technician (Collection) Seaman (E–3), U.S. Navy.**

**NMCM 89 2734.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 24 April 1989.

Decided 9 July 1991.

LT Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

LT Kirk A. Ludwig, JAGC, USNR, Appellate Government Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Before ALBERTSON, LANDEN and LAWRENCE, JJ.

ALBERTSON, Senior Judge:

By exceptions and substitutions and in accordance with his pleas, appellant was found guilty of violating Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934. Appellant was found guilty of one specification alleging violation of a lawful general regulation Chief of Naval Operations Instruction (OP-NAVINST) 5510.1H: Department of the Navy Information and Personnel Security Program) (OPNAV) by failing to safeguard classified materials in his possession and two specifications alleging espionage under 18 U.S.C. §§ 793(e) and (f)(1) (hereinafter "section 793(e)" and "section 793(f)(1)") by removing a classified document from its proper location and willfully retaining it. After his pleas of guilty were accepted to these specifications, the military judge merged the specifications into one offense for sentencing purposes. Appellant was sentenced to confinement for 4 years, reduction to pay grade E-1, forfeiture of all pay and allowances, and a bad-conduct dis-

charge. The convening authority approved the sentence as adjudged, but suspended all confinement in excess of 3 years for 12 months.

## I. PREEMPTION

■ Appellant argues that prosecution under Article 134, UCMJ, for violating section 793(e)[1] for unauthorized retention of a classified document was preempted by his guilty pleas to the Article 92, UCMJ, offense of violating the OPNAV instruction. We find no merit to his argument.

Appellant had authority to possess the classified document in the performance of his duties, but his possession became unauthorized when he took that classified document out of secure spaces to his home. In so doing, appellant violated both the provisions of the OPNAV instruction prohibiting removal of classified documents from secure spaces, contrary to his required duties, and section 793(e) by becoming an unauthorized possessor of the classified information when he removed it from its secure place without authority, willfully retained it, and failed to return it to the proper custodians. Appellant's violation of section 793(e) persisted until, days later, the document was recovered and returned to proper custody.

■ None of the specific punitive articles in the UCMJ cover the duty to protect classified information and return it to the proper authorities when one has unauthorized possession of classified information. 18 U.S.C. § 793(e) makes criminal precisely the conduct engaged in by appellant, and is properly applicable to the appellant under the provisions of the UCMJ. Article 134, clause 3; Para. 60c(4)(b), Manual for Courts-Martial, United States, 1984. Congress did not intend that orders of both general and local applicability issued by commanders and enforceable against military members would preempt a federal criminal statute (18 U.S.C. § 793(e)) which

---

1. In pertinent part, 18 U.S.C. § 793(e) reads: "Whoever having unauthorized possession of, access to, or control over any document or information ... relating to the national defense ... willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it: ... Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

is specifically enforceable under clause 3 of Article 134, UCMJ. The inadvertent condemnation in a general regulation of conduct that violates a section of the Federal penal code would effectively limit the punishment for such criminal conduct to a maximum of a dishonorable discharge and 2 years of confinement, thereby frustrating the intent of Congress in establishing clause 3 of Article 134, UCMJ. We find nothing in the material cited by appellant that supports the proposition he maintains. In short, general orders cannot and do not preempt offenses that Congress made applicable to the military through Article 134. *See United States v. Wright*, 5 M.J. 106 (C.M.A.1978).

## II. PROVIDENCE INQUIRY

The providence inquiry regarding the appellant's plea of guilty to Specification 2 of Charge IV reveals that appellant, a lawful possessor or one entrusted with the possession, knowingly removed a classified document from its secure spaces and took it to his home without proper authorization. The facts elicited show that when he removed the document from the secure spaces he became an unauthorized possessor because he took the document beyond the scope of his lawful and authorized possession. At no time after he left the proper place of custody with the document in his possession did appellant have authorized possession of or was he entrusted with the document. Since the facts show appellant was an unauthorized possessor of the document, there is no factual basis to support the first element of section 793(f)(1) which requires the offender to be a lawful possessor or one who has been entrusted with the document.

 Additionally, the providence inquiry fails to reveal a sufficient legal basis to support the finding of guilty to Specification 2, Charge IV. The statutory language of section 793(f)(1) contains the term "per-

mit" as the active ingredient for the gross negligence condemned.[2] The statute, however, does not define "permit." When the statute does not define the term it uses, absent indications to the contrary, the term is ordinarily interpreted according to its general usage or common meaning. *See United States v. Gonzalez*, 16 M.J. 428, 429 (C.M.A.1983) (citing *Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975)). "Permit" means "[t]o suffer, allow, consent, let; to give leave or license; to acquiesce by failure to prevent, or to expressly assent or agree to the doing of an act." *Black's Law Dictionary* 1026 (5th ed. 1979). This definition implies that before one entrusted with or in lawful possession of a document is criminally liable for his conduct under the removal portion of section 793(f)(1), a third party must be the remover of the document. Although the statutory language of section 793(f)(1) should be given broad interpretation, *United States v. Gonzalez*, 12 M.J. 747, 751 n. 6 (A.F.C.M.R.1981), *aff'd*, 16 M.J. 428 (C.M.A.1983), such an interpretation must be logical and consistent with the conduct Congress intended the statute to prohibit. *See Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); S.R.Rep. 2369, 81st Cong.2d Sess (1950); H.R.Rep. 647, 81st Cong. 1st Sess. (1949), U.S. Code Cong. Serv., p. 3886. In light of our reading of the statute as a whole and its legislative history, we do not find it logical that the Congress intended as the target of its prohibition under this subsection the individual who "permits" himself because of his gross negligence to remove a document entrusted to him, or in his lawful possession, from its proper place of custody. We believe this interpretation is supported in particular by comparing the language of section 793(e) with section 793(f)(1). The former provision uses verbs that contemplate direct active participation

---

**2.** In pertinent part, 18 U.S.C. § 793(f)(1) reads: Whoever, being entrusted with or having lawful possession or control of any document or information ... relating to the national defense, (1) through gross negligence permits the same to be removed from its proper place of custody or delivered to anyone in violation of his trust, or to be lost, or stolen, abstracted, or destroyed....
Shall be fined not more than $10,000 or imprisoned not more than 10 years, or both.

in the unauthorized handling of the document by the individual entrusted with or in lawful possession of the document. The latter uses verbs indicating a passive participation in the handling of the document by the same individual allowing a third party as the remover to become an unauthorized/illegal possessor of the document. At no time did appellant because of his gross negligence permit another party to remove the classified document from its proper place of custody; rather, he stuffed the document down his pants front and walked out of the building with it; he deliberately, intentionally and without authorization took the documents beyond the scope of his lawful possession and entrustment. Appellant was in unauthorized possession of the document. We hold, therefore, that the conduct prohibited by 18 U.S.C. § 793(f)(1) presupposes compromise of the classified[3] material through gross negligence by one who has authorized possession of, or has been entrusted with, the material *permitting* it to be removed from its proper place of custody by a third party.

■ Accordingly, the facts elicited by the military judge do not support the appellant's plea of guilty to Specification 2, Charge IV, and the legal sufficiency of the providence inquiry is also deficient in light of our interpretation that a third party was the perpetrator that the removal portion of the provision alleged is meant to hold criminally liable. *See Gonzalez* (wherein the accused inadvertently removed but by his subsequent gross negligence lost the document entrusted to him). Section 793(e) rather than section 793(f)(1) prohibits appellant's conduct. The finding of guilty to Specification 2 of Charge IV is set aside and Specification 2 is dismissed.

### III. MULTIPLICITY

Assuming arguendo that we are incorrect in our interpretation of section 793(f)(1) such that appellant's conviction is sustainable, we find the course of conduct for which appellant was convicted under section 793(e) is the same course of conduct for which he was convicted under section 793(f)(1) and therefore the offenses are multiplicious for findings purposes. As such we would dismiss the findings as to Specification 2 under Charge IV.

■ Appellant's failure to protect the classified document in violation of the OPNAV instruction and his unauthorized possession and willful failure to return the document to an officer or employee of the U.S. Government entitled to receive it, as alleged in the Specification under Charge I and Specification 1 of Charge IV, respectively, were related as a part of a single course of conduct. These offenses were not multiplicious or unreasonably duplicative for purposes of findings because the offenses did not stand in the relationship of greater and lesser offenses, the facts were not part of an indivisible crime, and the facts do not reflect a continuous course of conduct prohibited by one statutory provision. *United States v. Baker*, 14 M.J. 361, 366 (C.M.A.1983). We agree with the military judge, however, that these offenses are multiplicious for purposes of sentencing.

The remaining assignments of error are without merit. *See United States v. Allen*, 31 M.J. 572 (N.M.C.M.R.1990); Article 66(c), UCMJ, 10 U.S.C. § 866(c). The findings, as modified above, and the sentence, as approved on review below, are affirmed.

Judge LANDEN concurs.

LAWRENCE, Judge (concurring in part/dissenting in part):

I concur in holding that a prosecution under clause 3 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, is not barred because the same conduct may be prosecuted as a violation of a regulation or order under Article 92, UCMJ, 10 U.S.C. § 892. To accept such a

---

**3.** The information or document may, but need not, be of the type requiring classification under the security criteria within the Department of the Navy. *See United States v. Harris*, 30 C.M.R. 588 (A.B.R.1967), *aff'd*, 18 U.S.C.M.A. 596, 40 C.M.R. 308 (1969) (citing only *Gorin v. United States*, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488, *reh. denied*, 312 U.S. 713, 61 S.Ct. 618, 85 L.Ed. 1144 (1941)).

proposition would not only frustrate congressional intent in including clause 3 in Article 134 but would severely restrict military commanders in regulating conduct that is similar to that proscribed by Federal penal statutes. This case perfectly illustrates the point. Federal penal statutes do not prohibit every act that is detrimental to national security or that involves the mishandling of classified or otherwise sensitive materials. Those statutes do not purport to regulate the details of the day-to-day use, handling, and custody of documents and other materials that are central to intelligence activities by civilian or military agencies. Appellant would have us hold that because Congress has proscribed certain conduct that logic and history have shown to be inimical to our national security the Chief of Naval Operations cannot promulgate and punitively enforce necessary and appropriate regulations to control the use and handling of classified or otherwise sensitive information without rendering portions of section 793 inapplicable to members of the United States Navy. This contention flies in the face of the law, common sense, and obvious military necessity.

Regarding the interpretation of section 793(e), this section concerns only persons whose possession of, access to, or control over any enumerated matter is "unauthorized." Subsection (e) does not indicate whether authorized persons who act beyond the scope of their authorization lose their authorized status such that they may be prosecuted under this subsection, or whether persons whose initial possession of, access to, or control over any enumerated matter was legal may only be prosecuted under section 793(d). If the language of the subsection is correctly interpreted to pertain only to those persons whose initial possession of, access to, or control over the matter was unauthorized, appellant's conduct would not fall under this subsection.

The choice of the word "unauthorized" was intended to "preclude the necessity for proof of illegal possession" and was a change from the language of former section 793 that used the terms "lawfully or unlawfully." H.R.Rep. No. 647, 81st Cong., 1st Sess. 4 (1949). Within the context of a criminal proscription, the least disputable ordinary meaning of the term "unauthorized" is that which is contrary to law or regulation. There is another meaning, however, that is used appropriately when conduct or a status ordinarily occurs or exists only if it is permitted or directed by some higher authority. Certain information that is critical to national security is closely controlled and only a limited number of persons who require the information to properly perform their duties may possess, have access to, or have control over it. The enumerated items and information listed in section 793 are especially protected. Even for government employees, access to such information is the exception, not the rule. Authorization for access to such information must be affirmatively permitted or directed by some competent authority; therefore, I conclude that within the context of section 793 unauthorized possession is also that which is not affirmatively permitted or directed by a competent authority. Under this interpretation, a person who comes into possession of such an item or information who lacks any legal or regulatory authority to possess, have access to, or have control over it may be prosecuted under section 793(e) as well as a person who is initially affirmatively authorized those rights but who violates the terms of that authorization. *Cf. United States v. Morison,* 844 F.2d 1057 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988). This conclusion results in an admittedly broad interpretation of the term.

Assuming arguendo an ambiguity in the meaning of this term sufficient to justify resort to legislative history or motivating policy behind the legislation, *see Moskal v. United States,* —— U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990), the sparse legislative history but clear motivating policy behind these amendments support this broad interpretation. The amendments were drafted by an interdepartmental intelligence committee whose members were aware of regulations and orders in civilian agencies

and military departments that controlled access to and handling of classified or otherwise sensitive materials. Senator McCarran, the sponsor of the amendments, explained that section 793(e) was to close one of two "glaring loopholes" that ostensibly were in existing legislation. The subsection was "to prevent such a ludicrous circumstance as arose in the famous Chambers pumpkin papers, wherein a man could have unauthorized use of certain defense and security information and yet not be committing an unlawful act when he neglects to deliver the information up to proper authorities." Cong.Rec. 14177 (Sept. 5, 1950). Senator McCarran went on to point out that former section 793(d) required that appropriate authorities make a demand on the unauthorized possessor and until the demand was refused no crime had taken place.

> The inadequacy of this provision is self-evident, since by the very nature of things an unauthorized possessor would most likely not be known to those entitled to receive the restricted enumerated items. The most famous example of this situation is, of course, the Chambers pumpkin papers. Chambers had in his possession—that is in his unauthorized possession—certain restricted or classified items which related to national defense. Yet, his possession of such items was not a crime. He could not be charged with a crime in respect to his possession of the pumpkin papers until a person entitled to receive those items made a demand upon him for their delivery, and then only if he refused the demand.
>
> This situation is corrected by the subsection lettered 'e' … which provides that those who have unauthorized possession of any of the enumerated items in the existing law relating to the national defense must surrender possession thereof to the proper authorities regardless of a demand therefor.

*Id.* at 14178 (emphasis added).

In 1948, Whittaker Chambers appeared for a second time before a subcommittee of Congress and produced copies of numerous documents, most of which came from the State Department, that he said he received years before from Alger Hiss, Harry Dexter White, and other persons. Due to their place of storage by Chambers, they became known as the "pumpkin papers." *See, e.g.,* H.R.Rep. No. 1229, 82d Cong., 2d Sess. 56–58 (1952). Unlike Hiss or White, who when the documents were passed were government employees, Chambers apparently at no time had any authorized possession of, access to, or control over them. He was a private citizen who came into possession of these sensitive items from persons whose delivery of them was undoubtedly contrary to law and regulation, and the fact that Chambers could not be prosecuted for his lengthy undisclosed retention of them angered and upset many Americans in and out of Congress.

Additional support for the contention that section 793(e) embraces the conduct of those whose initial possession is unauthorized as well as those whose initial possession is authorized is found in the House report concerning these changes that pointed to "serious gaps in our present laws [that] permit people, both citizens and aliens alike, opportunities to acquire information vital to our national security and to use that information to the disadvantage and danger of the United States without fear of prosecution in our courts." H.R.Rep. No. 647, 81st Cong., 1st Sess. 2 (1949). The reference to "both citizens and aliens alike" strongly suggests a broad intended scope to section 793(e) to reach not only those authorized possessors who violate the terms of their authorization but also persons such as aliens, whose possession of any enumerated item or information is rarely permitted, much less directed, by competent authority, who, like Chambers, might receive documents from an Alger Hiss or Harry Dexter White and willfully retain them for nefarious purposes.

In general, the legislative history shows that Congress intended to place an affirmative duty on both lawful and unauthorized possessors to report any condition that has resulted or might result in actual or potential compromise of enumerated items or national defense information. One means

for doing so was drafting section 793(e) to omit a demand requirement. *See, e.g.,* H.R.Conf.Rep. No. 3112, 81st Cong., 2d Sess. (1950).[1] As noted by Senator McCarran, the government has no opportunity to make a demand to return an item in a situation such as the Chambers case since it is unaware of the unauthorized possession. Likewise, the government often cannot make a prompt demand in the case of an authorized person who surreptitiously violates the terms of his authorization by improperly removing or copying an enumerated item since the government may be unaware of the removal or copying. An important facet of the Chambers case was the unauthorized removal or copying and willful retention by government employees of sensitive information that went undiscovered for many years.

Given the clear motivating policy behind these amendments to protect national defense information from any kind of compromise and to make prosecution of government employees as well as private citizens whose conduct threatens national security more practicable, it is reasonable to conclude that Congress in section 793(e) intended the broad interpretation of the term "unauthorized" that is enunciated herein. The least disputable ordinary meaning of the term "unauthorized" in penal statutes, which is sufficiently obvious and accepted to foreclose reference to legislative history or motivating policy behind the legislation, is thus expanded by the legislative history and motivating policies behind the legislation to include also the wider meaning of that which is not affirmatively permitted or directed by competent authority. Since there is no resulting substantial doubt regarding the section's intended scope, the rule of lenity is irrelevant to interpretation of the statute and this case.

The evidence establishes that appellant exceeded the scope of his authorized possession of and control over these documents in taking them from their place of custody to his home. This removal was prohibited by military law and regulation and therefore falls within the broad meaning of the term unauthorized as it is used in this statute. After having removed these documents from their proper place, appellant willfully retained them in his home for several days. He did not deliver them to a person entitled to receive them during this period of retention and only their inadvertent discovery by another person who was unauthorized to possess, have access to, or have control over the documents brought them to the attention of proper authority. I conclude, therefore, that appellant's conviction of violating section 793(e) is fully supported by the evidence.

I dissent from the majority's dismissal of appellant's conviction of violating section 793(f)(1). Certainly, the conviction may not be based on appellant's own removal of the documents rather than removal by another person as the subsection clearly requires. Appellant's gross negligence did, however, result in the loss of national defense information when another sailor inadvertently discovered the documents in appellant's home a couple days after appellant had removed them. This discovery by one who had no apparent authorization to possess, have access to, or have control over them constitutes a "loss," within the broad scope of section 793(f)(1), of the information contained within them. *Cf. United States v. Gonzalez,* 16 M.J. 428 (C.M.A.1983). Since such loss is prohibited in the same subsection of section 793(f) as the removal of which appellant was convicted in accordance with his pleas and the maximum authorized punishment is therefore the same as for the removal, the loss is a closely-related offense. If an accused pleads guilty and during the providence inquiry his responses establish a different but closely-related offense having a similar maximum punishment, the guilty plea may be affirmed on review. *United States v. Hubbard,* 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps,* 25 M.J. 319, 323 (C.M.A.1987); *United States v. Felty,* 12

---

**1.** Another was requiring in section 793(f)(2) lawful possessors to report security violations of which they are aware.

M.J. 438 (C.M.A.1982). I would affirm appellant's conviction of violating section 793(f)(1) on this basis.

In coming to this conclusion, I dissent from the majority's contention that prosecution under section 793(f)(1) is precluded of a person who, being entrusted with an enumerated item or information relating to the national defense, in some way violates the terms of his entrustment: violation of the terms of this kind of entrustment does not terminate the entrustment. The terms of any entrustment of national defense information necessarily include a requirement of due "care, use or disposal of it," *see Black's Law Dictionary* 478 (5th ed. 1979); thus, if the majority's interpretation were accepted, many, if not all, acts of gross negligence that constituted a violation of section 793(f)(1) would terminate the entrustment and preclude prosecution under the section.

Additionally, section 793(f) applies to *lawful* possessors or those in lawful control, not *authorized* possessors or controllers. It is entirely illogical that a military member may not be prosecuted under section 793(f)(1) because his unauthorized possession or control is unlawful as a violation of Article 92, although a civilian may be prosecuted because his unauthorized possession or control is not a violation of a Federal penal statute. I cannot conclude that Congress intended an interpretation of the phrase "being entrusted with" or "having lawfully possession or control" in section 793 that would render the section ineffective to punish the conduct against which it is obviously directed.